IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| VIRGINIA NESTER and ROBERT SCOTT NESTER, INDIVIDUALLY and AS NEXT FRIEND OF C.N. AND S.N., MINORS | § § § | IN THE DISTRICT COURT |
| | § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 1:13-CV-00920-LY |
| | § | JURY DEMANDED |
| TEXTRON, INC. d/b/a E-Z-GO, UNITED RENTALS, INC. f/k/a RSC HOLDINGS, INC. and/or RSC EQUIPMENT RENTAL, | § § § | |
| Defendants. | § | |

---

**DEFENDANT TEXTRON, INC.'S MOTION FOR PROTECTIVE ORDER
AND TO VACATE AND, IN THE ALTERNATIVE, TO STAY, RELATIVE TO
PLAINTIFFS' FRCP 30(b)(6) NOTICE OF THE DEPOSITION OF THE
CORPORATE REPRESENTATIVE(S) OF TEXTRON, INC. d/b/a E-Z-GO**

---

### I. CERTIFICATE OF CONFERENCE

The parties have attempted in good faith to resolve this matter by agreement. Plaintiffs'

counsel originally sent Textron's counsel a letter, dated October 13, 2014, with 112 proposed

topics of inquiry for the deposition of Textron's FRCP 30(b)(6) corporate designee. ("**Exhibit**

**1**"). Textron responded by email with a detailed summary of its objections to the breadth, scope, and nature of the topics in the letter ("**Exhibit 2**"). Therein, counsel for Textron explained its objections to the topics set forth in the letter both by setting forth specific objections, and pointing out that the topics asked for an overwhelming amount of information about irrelevant carts, irrelevant accidents, irrelevant incidents, irrelevant designs, irrelevant components, and irrelevant computer modeling.   Exhibit 2 at p. 5.  Textron's counsel further explained that the topics attempted to discover Textron's experts' opinions before Textron's expert designation deadline (and before Textron has had an opportunity to review and evaluate the plaintiffs' experts' opinions) which contravenes this Court's scheduling order. *Id.*  In a subsequent email, Textron's counsel offered to produce its corporate designee(s) on December 3, 4, or 5 for deposition subject to counsel reaching an agreement on the issues discussed in Exhibit 2. ("**Exhibit 3**").  Then, on November 7, 2014, Plaintiffs' counsel, without further discussion, of the issues raised by Textron's counsel, submitted Plaintiffs' Corporate Designee Notice of Deposition (the "Notice") ("**Exhibit 4**"), setting the deposition for December 3, 2014.  Therein, Plaintiffs set forth 110 extremely broad and still largely objectionable topics of inquiry and, with few exceptions, entirely failed to address the objections raised by Textron's counsel in Exhibit 2. The topics are still extremely broad, irrelevant, un-particularized, inappropriate, and often unintelligible.  Textron's counsel then prepared this motion and, on November 20, 2014, Textron submitted this motion, along with **Textron's Objections to the Individual Topics of Inquiry Set Forth in Plaintiffs' FRCP 30(b)(6) Notice of the Deposition of the Corporate Representative(s) of Textron, Inc. d/b/a E-Z-GO**, a copy of which is attached as **"Exhibit 5."**, to Plaintiffs' counsel for further consideration of whether some agreement could be reached as to

the topics of inquiry. The parties were unable to agree on the appropriate scope of the notice of Textron's corporate designee. Therefore, this matter is submitted to the Court for consideration.

Still, until such time as Textron's objections are heard, Textron is required to provide a witness knowledgeable as to the perceived wealth of "corporate knowledge" relating to all of the topics set forth in the notice, most of which are improper. Textron cannot reasonably be expected to comply, on December 3, 2014, or at any later date, with the unreasonable scope of discovery set forth in the Notice. For these reasons and the reasons described in further detail in the motion below, Textron has respectfully moved for protection and to vacate the Notice. In the alternative, if the Court cannot rule upon the propriety of each of the topics on or before December 3, 2014, Textron respectfully requests that the Court stay the deposition until such time as a ruling can be made on Textron's objections to the Notice set forth in Exhibit 5.

The substance of the motion begins below.

.

Respectfully submitted,

Tara E. Hanley

## II.    MOTION FOR PROTECTION

Defendant, Textron, Inc. ("Textron"), by and through its attorneys, Markland Hanley, LLP, files this Motion for Protective Order and to Vacate, and, in the alternative, Motion to Stay, with respect to Plaintiffs' Corporate Designee Notice of Deposition (the "Notice") (**"Exhibit 4"**), and, for such cause, respectfully shows the Court the following:

Plaintiffs' Notice was served on November 7, 2014, and sets the deposition of Textron's corporate designee for December 3, 2014.  The Notice is improper in that it fails to describe the matters of inquiry with reasonable particularity as required by Rule 30(b)(6), sets forth numerous unintelligible, overly broad topics of inquiry which call for information that is neither relevant to this case nor likely to lead to the discovery of admissible evidence, and sets forth numerous topics of inquiry which are wholly inappropriate topics for a corporate representative deposition in that discovery of such information should more properly be acquired through written discovery rather than through the deposition of a corporate representative and/or in that such topics improperly call for expert opinion testimony before the disclosure of Defendant's expert testimony is required under this Court's scheduling order.  Textron, respectfully requests that the Court enter a Protective Order vacating the Notice.  If the Court is not able to address and rule upon the motion for protection and to vacate before the scheduled December 3, 2014 deposition of Textron's corporate designee(s), Textron requests, in the alternative, that the Court enter an Order staying the deposition until such time as the Court has ruled upon the propriety of each of the objected to topics of inquiry set forth in the Notice.

## III.    FACTS

**DEFENDANT TEXTRON, INC.'S MOTION FOR PROTECTIVE ORDER AND TO VACATE AND, IN THE ALTERNATIVE, TO STAY, RELATIVE TO PLAINTIFFS' FRCP 30(b)(6) NOTICE OF THE DEPOSITION OF THE CORPORATE REPRESENTATIVE(S) OF TEXTRON, INC. d/b/a E-Z-GO**                    **Page 1**

This complex personal injury and product liability matter arises from an accident in which Plaintiff, Virginia Nester, was injured while using an E-Z-GO Workhorse utility cart. Textron manufactured the cart. Mrs. Nester was attempting to utilize cattle cubes, a well-liked snack for the animals, to lure a herd of cattle from one gated pasture located on the Nester's ranch to another gated pasture on their ranch. Mrs. Nester placed a 50 pound bag of cattle cubes on the floorboard of the cart not far from the accelerator pedal. She then drove the cart through the pasture where the cattle were located and honked the cart's horn to attract the cattle toward her. The cattle had previously been conditioned to approach the cart, when the horn was honked, to receive the cattle cubes. Then, as the cattle eagerly moved toward the cart, Mrs. Nester exited the cart to open the gate. She left the cart running, in the "on" position, and facing toward the gate. She then walked in front of the cart to open the gate just as the cattle began to surround the cart in an effort to get to the cattle cubes. Mr. and Mrs. Nester and those arriving on the scene immediately subsequent to the injury have testified that they believe the cattle knocked, pushed, or pulled the 50 pound bag of cattle feed that Mrs. Nester had left in the front driver/passenger compartment floorboard onto the accelerator pedal of the cart. The pressure of the 50 pound bag of cattle cubes on the accelerator pedal disengaged the cart's park brake system, allowed the cart to be energized, and allowed the cart to move forward. Propelled by the 50 pound cattle cube bag on the accelerator pedal, the cart ran into Mrs. Nester, and she was seriously injured.

Plaintiffs contend that negligence on the part of Textron in the design and/or marketing of the cart and/or a defective condition existing in the cart with respect to its design and/or marketing caused the accident and Mrs. Nester's resulting injuries. Textron contends that the cart is neither defectively nor negligently designed and/or marketed and that negligence on the

part of Mrs. Nester in failing to adhere to the warnings supplied with the cart, and in failing to exercise the care that a reasonable person under the same or similar circumstances would have exercised with respect to utilizing the cart and cattle cubes for the purpose of moving the cattle and with respect to her process for dealing with cattle and equipment, caused the accident and Mrs. Nester's resulting injuries.  This complex product liability and negligence case involves multiple legal issues and myriad documents.

The Notice, setting forth 110 overly broad, often unintelligible, areas of examination which, when broken down into their voluminous sub-parts, actually number into many hundreds, if not more than a thousand, topics of vaguely drafted, objectionable, and largely inappropriate topics of inquiry for the deposition of a corporate designee, should be vacated and a protective order finding that Textron is not required to comply with the Notice should be entered.

### III. ARGUMENT AND AUTHORITIES

As the Court is aware, to satisfy its Rule 30(b)(6) obligations, Textron must ascertain all of the knowledge necessary to respond to the topics for examination and, because it is impossible for any one person or even several individuals within the company to have all such knowledge, Textron must then endeavor to teach that knowledge to one or more corporate designees. Gathering the "corporate knowledge" is frequently a challenging chore in its own right.  It is equally burdensome to prepare one or more individuals to be able to testify adequately as to the vast number of matters set forth in the Notice which are or were known to the company over the past nearly 40 years, as the Notice in some cases requires. In addition to the substantial expenditures of time and resources associated with preparing one or more corporate designees to respond regarding hundreds of different sub-parts of topics, Textron is legally bound by the

testimony given by the corporate representative. In effect, if allowed to proceed as noticed, the deposition or depositions will require the witness or witnesses that Textron designates to accomplish a Herculean task that no one person or even set of persons could reasonably be expected to accomplish given the breadth of the topics, the thousands of pages of potentially significant documents, and the massive amount of information to be processed in preparing to testify as to the vast spectrum of complicated topics set forth in the Notice. Textron cannot possibly provide a witness or even multiple witnesses who can accurately know or learn and accurately reflect the "company's knowledge," off the cuff, as to all of the topics set forth in the Notice. Moreover, many of the topics are unnecessarily overly broad, un-particularized as required by FRCP 30(b)(6), and call for irrelevant information such that requiring Textron to do so would be a waste of the time and resources of the parties.

Under these circumstances, notions of fairness dictate that Textron should not be required to produce a witness and become bound by testimony provided by an individual (or individuals) who simply cannot possibly digest the expansive amounts of information at issue in the Notice in a manner that allows the individual to serve adequately as the company's binding spokesperson. Where such circumstances exist, the federal rules and federal case law support Textron's position that the information to be communicated during a Rule 30(b)(6) deposition can be discovered just as effectively and more efficiently through written discovery and written discovery is, therefore, the appropriate means by which plaintiff should seek this information. The time, expense, burden, and inefficiency of requiring Textron to submit to a Rule 30(b)(6) deposition where the circumstances are conducive to more reasonable methods of discovery is not justified.

In evaluating the appropriateness of a Rule 30(b)(6) deposition in a given case, it is important to consider the underlying purpose of discovery under the federal rules. Generally, that purpose is "to provide a mechanism for making relevant information available to litigants." *Kinetic Concepts, Inc. v. Convatec, Inc.*, 268 F.R.D. 255, 257 (M.D.N.C. 2010) (citing Fed. R. Civ. P. 26 advisory committee's notes (1983 amendment)). The Advisory Committee has recognized that "the spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons[,] rather than to expose the facts and illuminate the issues[,] by overuse of discovery. . . ." *See* Fed. R. Civ. P. 26 advisory committee notes (1983 amendment). Further, the Advisory Committee has also recognized that "[e]xcessive discovery . . . pose[s] significant problems." *Id.* Indeed, as the committee notes suggest, the discovery methods available to parties should be used judiciously and in a manner that does not unnecessarily burden opposing parties.

In view of these considerations, Rule 26(b)(2)(C) requires a federal court, on motion or on its own, to "limit the frequency or extent of discovery . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive. . . ." Fed. R. Civ. P. 26(b)(2)(C)(i). The provisions of this subsection are mandatory, not permissive, and can and should be relied on where opposing parties proceed with discovery in a manner inconsistent with these provisions. Moreover, the rules are designed to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. These considerations are critically important in evaluating the appropriateness of a Rule 30(b)(6) deposition in a given case.

Although the federal rules expressly provide for depositions of corporate representatives, this discovery tool, like all others provided for by the federal rules, is subject to the requirements of Rule 26. Indeed, courts have recognized circumstances under which a Rule 30(b)(6) deposition is not the appropriate discovery mechanism for acquiring the desired information and have therefore denied motions to compel (or granted motions for protective orders against) Rule 30(b)(6) depositions in favor of other forms of discovery. *See, e.g.*, *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, 286 (N.D. Cal. 1991) (assessing whether contention interrogatories or a Rule 30(b)(6) deposition "would yield most reliably and in the most cost-effective, least burdensome manner information that is sufficiently complete to meet the needs of the parties and the court in a case like this"), *overruled on other grounds*, 765 F. Supp. 611 (N.D. Cal. 1991). *See also Avocent Redmond Corp. v. Rose Elecs.*, No. C06-1711RSL, 2012 WL 4903272, at *3 (W.D. Wash. May 29, 2012) (citing *McCormick-Morgan* and expressing "concerns regarding the efficacy and fairness" of broad Rule 30(b)(6) deposition topics); *TV Interactive Data Corp. v. Sony Corp.*, No. C 10-475 PJH (MEJ), 2012 WL 1413368, at *3 (N.D. Cal. Apr. 23, 2012) (applying *McCormick-Morgan* and denying Rule 30(b)(6) deposition in a patent case, noting that party could learn similar information through interrogatories); *SmithKline Beecham Corp. v. Apotex Corp.*, No. 99-CV-4304, 2004 WL 739959, at *3 (E.D. Pa. Mar. 23, 2004) (concluding that determination as to whether contention interrogatories are more appropriate than Rule 30(b)(6) depositions will be made on a case-by-case basis, and will be guided by concerns for minimizing costs and burdens) (internal quotations and citations omitted); *Exxon Research & Eng'g Co. v. United States*, 44 Fed. Cl. 597, 601 (Fed. Cl. 1999) (holding that, under the circumstances, contention interrogatories were more appropriate than

Rule 30(b)(6) depositions); *United States v. Taylor*, 166 F.R.D. 356, 363 n.7 (M.D.N.C. 1996) (recognizing that "[s]ome inquiries are better answered through contention interrogatories wherein the client can have the assistance of the attorney in answering complicated questions involving legal issues"); *Lance, Inc. v. Ginsburg*, 32 F.R.D. 51 (E.D. Pa. 1962) (requiring contention interrogatories on the question of whether a trademark was valid). *But see La. Pac. Corp. v. Money Mkt. Institutional Inv. Dealer*, 285 F.R.D. 481, 488 (N.D. Cal. 2012) (denying motion to quash Rule 30(b)(6) notice and rejecting arguments that broad categories of information were better suited to contention interrogatories). As gleaned from these cases, courts have most notably found Rule 30(b)(6) depositions inappropriate where the information sought to be discovered through the deposition could just as easily be obtained through a set of well-crafted contention interrogatories.

These courts have expressed multiple areas of concern with regard to requiring a company to submit to a Rule 30(b)(6) deposition. One such concern is that "no one human being can be expected to set forth, especially orally in deposition, a fully reliable and sufficiently complete account of all the bases for the contentions made and positions taken by a party" in circumstances involving complex facts and numerous legal issues. *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. at 286. *See also Exxon Research & Eng'g Co.*, Fed. Cl. at 601 (citing *Protective Nat'l Ins. Co. v. Commonwealth Ins. Co*, 137 F.R.D. 267 (D. Neb. 1989), for the proposition that a Rule 30(b)(6) deposition may not be appropriate when the topic is very complex). This concern apparently derives, at least in part, from the fact that a corporate representative cannot be expected to digest and regurgitate the volume of information necessary to satisfy the company's Rule 30(b)(6) obligation in complex litigation. *See, e.g., Camp v. Corr.*

*Med. Servs.*, No. 2:08cv227-WKW (WO), 2008 WL 5157910, at *5 (M.D. Ala. Dec. 9, 2008) ("The court is doubtful a single corporate representative could provide to the plaintiffs the information they seek. Accordingly, . . . plaintiffs' motion to compel will be denied and the defendants' motion for a protective order will be granted.").

In addition, courts have also expressed concerns that requiring Rule 30(b)(6) depositions will impose greater costs and burdens on corporate litigants than would written discovery that is equally capable of eliciting the desired information. *See, e.g., Exxon Research & Eng'g Co. v. United States*, 44 Fed. Cl. at 601 (stating that "contention interrogatories should be a less expensive method and are a less invasive method of letting the United States learn the required information"); *McCormick-Morgan, Inc.*, 134 F.R.D. at 286–88 (denying a Rule 30(b)(6) deposition where contention interrogatories were more cost-effective and less burdensome). This concern reflects the courts' application of Rule 26 and the committee notes discussed above insofar as it recognizes the need for litigants to refrain from engaging in discovery injudiciously and in a way that unnecessarily burdens opposing parties.

Both the Federal Rules and the above-cited cases recognize the need to manage discovery in a way that minimizes inconvenience, burden, and expense imposed on party litigants. With regard to corporate parties, one way to do so is by limiting the use of Rule 30(b)(6) depositions to situations in which such depositions are truly useful and unavoidable. Indeed, Rule 26 mandates that such limitations be imposed where appropriate.

In the case of complex litigation involving circumstances like those involved in this case, considerations of convenience, burden, and expense favor the use of written discovery over Rule 30(b)(6) depositions. Under these circumstances, where there is simply too much information for

a corporate representative to sufficiently know or learn, the deposition will often reflect nothing more than the representative's ability to retain information communicated to him or her during an intensive preparation period. Of course, the representative will retain only some of the information and will be unable to testify as to certain topics for which he or she cannot recall the information learned during preparation. Thus, the company will be presumed to know whatever that individual recalled and will be presumed not to know whatever that individual could not recall.  Under these circumstances, a Rule 30(b)(6) Notice is not the appropriate method by which to arrive at the truth and achieve justice.

The better approach under such circumstances is to require the party seeking the deposition to submit written discovery—whether interrogatories or requests for admission—that seek the same information and do not rely on an individual to learn and regurgitate the company's response. Instead, the company, which itself will have only recently ascertained what the company "knows," will have the benefit of reviewing all information available to it in responding to the discovery requests and will be better equipped to provide useful discovery responses. Equally important, the company will not be required to suffer through the burdensome task of discovering the corporate "knowledge" and then preparing an individual to supply this knowledge orally to the opposing party. Ultimately, requiring the use of written discovery under these circumstances will reduce the costs and burdens of discovery, promote more accurate discovery responses, and rectify the incongruity of requiring the company to designate an individual who cannot fairly be expected to articulate the company's response to countless and complicated topics fully and accurately.

## IV.    PRAYER

For all of the foregoing reasons, Textron, Inc. respectfully requests that this Court enter a Protective Order, for good cause shown, ruling on each of Textron's objections to the topics of inquiry, which objections are set forth in Exhibit 5 to this motion, vacating the Notice, and requiring the Plaintiff to limit the scope of any further FRCP 30(b)(6) notice to matters of inquiry which are proper in scope, relevant, particularized, appropriate for a 30(b)(6) notice, and do not call for expert opinion testimony in advance of Textron's deadline to provide expert opinion testimony. In the alternative, Textron respectfully requests that the Court enter an order, for good cause shown, staying the deposition of Textron's corporate designee, currently set for December 3, 2014, until such time as the Court has had the opportunity to rule on Textron's objections, and further requests all further relief to which Textron may show itself justly entitled.

Respectfully submitted,

DALE G. MARKLAND
State Bar No. 12988500
dmarkland@marklandhanley.com
TARA E. HANLEY
State Bar No. 00784205
thanley@marklandhanley.com
DELWIN E. HERVEY
dhervey@marklandhanley.com
State Bar No. 90001632
MARKLAND HANLEY L.L.P.
2200 Ross Avenue, Suite 4100W
Dallas, TX 75201

(469) 341-3633  ph
(469) 341-3640  fax

ATTORNEYS FOR DEFENDANT
TEXTRON, INC.

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the above and foregoing was served on counsel for Plaintiffs in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court on the 24th day of November, 2014.

Tara E. Hanley