**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| VIRGINIA NESTER AND ROBERT | § | |
| SCOTT NESTER, INDIVIDUALLY AND | § | |
| AS NEXT FRIEND OF C.N. AND S.N., | § | |
| MINORS, | § | |
| Plaintiffs | § | Cause No. A-13-CA-920-LY |
| V. | § | |
| | § | |
| TEXTRON, INC. D/B/A E-Z-GO, | § | |
| UNITED RENTALS, INC. F/K/A RSC | § | |
| HOLDINGS, INC. AND/OR RSC | § | |
| EQUIPMENT | § | |
| RENTAL, | § | |
| Defendants | § | |

**ORDER ON PENDING DISCOVERY MOTIONS**

On March 4, 2015, counsel for all parties appeared in person before the undersigned and presented argument concerning Plaintiffs' Motion to Compel Production of Documents [Clerk's Dkt. No. 41]; Defendants Textron, Inc.'s Motion for Protective Order and to Vacate Plaintiffs' Notices of Intent to Take Depositions of Non-Party Aliens in the United Kingdom and Request for Attorney's Fees and Expenses [Clerk's Dkt. No. 42]; Plaintiffs' Motion in the Alternative to Compel the Designation of a Proper 30(b)(6) Corporate Representative [Clerk's Dkt. No. 49], and all responses and replies thereto. The motions were referred to the undersigned United States Magistrate Judge for resolution as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(c) of Appendix C to the Local Rules of the United States District Court for the Western District of Texas. Having considered the briefing, argument of the parties, applicable law, and the case file as a whole, the undersigned rules as follows.

## I.        Background

This case involves injuries suffered by Virginia Nester in 2011 while using a Workhorse cart manufactured by Textron/E-Z-Go.  Plaintiffs contend the cart's "kick off brake system" was defective as designed, causing an "unintended acceleration" that injured Ms. Nester.[1] Defendants assert the kick off brake is an industry standard and is safe for its intended uses. Discovery has thus included inquiries relating to any incidents of "unintended acceleration" in any other Textron/E-Z-Go vehicles using a kick off brake system.

Through discovery, Plaintiffs have learned of a 2005 fatal collision in the United Kingdom that involved an E-Z-Go multi-passenger shuttle with a kick off brake system. Ransomes Jacobsen, Ltd. ("RJL"), a U.K. distributor of E-Z-Go products, cooperated with a British government safety organization, the HSE, which investigated the incident. RJL is an indirect subsidiary of Textron, Inc.  Textron personnel provided information and guidance, including legal advice, to RJL concerning the HSE investigation.

All three of the current discovery disputes relate to Plaintiffs' contention that they are entitled to more information about the 2005 accident and investigation.  At the hearing, the parties agreed that Textron has supplemented its original minimal production on this issue by providing substantial contemporaneous documentation from its indirect subsidiary, RJL. Nevertheless, the parties dispute three issues relating to this supplemental production:

---

[1] The terms "kick off brake system" and "unintended acceleration" have been specifically defined by Plaintiffs in their discovery requests.  *See* Pf's Resp. to Mot. Prot. Ord. [Clerk's Dkt. No.49], Exhibit 6 at 3.  In particular, an "unintended acceleration" is defined as "a forward acceleration of the Textron product which was not intended but occurred as a result of the depression of the accelerator and the resultant disengagement of the park brake in the Textron kick off brake system."  *Id.*

(1) **Access to Privileged Communications:**

      Textron has withheld some of these RJL documents as privileged, a claim which Plaintiffs challenge. *See generally* Pf's Mot. Compel [Clerk's Dkt. No. 42]. Defendants, not surprisingly, respond that the documents are clearly privileged and they are entitled to their fees and costs in defending this motion. Df's Resp. Mot. Compel [Clerk's Dkt. No. 43] at 5 and Exhibit B.

(2) **Depositions Pursuant to Fed. R. Civ. P. 30 of RJL Personnel in the U.K.:**

      Plaintiffs seek the depositions of three RJL employees and one former employee of RJL (the "RJL personnel"), who appear from the documents produced to have played a role in responding to the incident.  Def's Mot. Prot. Order [Clerk's Dkt. No. 42] at 4-5.  All of these potential witnesses are located in the United Kingdom and employed (or formerly employed) by RJL, not Textron.  Nevertheless, Plaintiffs contend a deposition notice to Textron under Federal Rule of Civil Procedure 30 is sufficient to compel the appearance of these witnesses because they were managing agents of Textron for purposes of the 2005 accident and investigation, given their close coordination with Textron of RJL's response to the HSE investigation of the incident.  Pf's Resp. Mot. Prot. Order [Clerk's Dkt. No. 49] at 9-10.

      Textron, of course, vigorously disputes that any employee of RJL had authority to speak for Textron in the 2005 incident or at present, and asserts the only proper means of compelling deposition of these witnesses is through the procedures of the Hague Convention.  Df's Mot. Prot. Order [Clerk's Dkt. No. 42] at 8.  Textron further requests an award of its fees and costs related to seeking a protective order quashing the depositions. *Id.*

(3) **Reconvened Deposition Pursuant to Fed. R. Civ. P. 30(b)(6):**

        As an alternative to deposing the RJL personnel, Plaintiffs seek to reconvene the 30(b)(6) deposition of a Textron corporate representative who is adequately prepared to testify for Textron regarding the HSE investigation. Pf's Mot. To Compel 30(b)(6) Deposition [Clerk's Dkt. 49] at 11-12. Plaintiffs contend that Textron unreasonably delayed its supplemental production of the RJL documents, and Textron's corporate representative on the issue of the 2005 accident and investigation was unfamiliar with these RJL documents at the time of his deposition. *Id.* at 4. Claiming they are entitled to depose a witness with knowledge of the 2005 accident and investigation, Plaintiffs seek to reconvene the 30(b)(6) deposition on the subjects of the 2005 incident and the RJL documents produced concerning the incident. *Id.* at 11.

        At the hearing, Textron represented to the undersigned that it previously offered to provide Jim Fisher, the original 30(b)(6) deponent, for re-deposition on the HSE investigation. Textron represents that Mr. Fisher has now familiarized himself with the RJL documents and is the person at Textron most knowledgeable about Textron's response to the 2005 HSE investigation.

        As all three of these issues are entwined, the undersigned considers the facts and circumstances surrounding all of the motions as a whole. In the interest of clarity, the undersigned will address each request for relief in turn.

## II.    Motion to Compel Production of Privileged Documents

        The undersigned will first address Plaintiffs' Motion to Compel the RJL documents not already produced. Plaintiffs' motion seeks production of eleven (11) emails, all dating from

2005, all of which are being withheld by Textron on grounds of attorney client privilege. Pf's Mot. Compel [Clerk's Dkt. 41], Exhibit A. Since the filing of this Motion to Compel, Textron has updated its privilege log to include two additional emails created in 2015, during this ongoing litigation, over which Textron claims privilege. *See* "E-Z-Go a Division of Textron Inc's Privilege Log (Revised 03-03-2015)" (provided to the undersigned with the *in camera* documents; this log is identical to Exhibit A of Pf's Mot. Compel [Clerk's Dkt. No. 41] with the exception of the addition of items 12 and 13, the 2015 documents). The parties' arguments at the hearing encompassed alleged deficiencies in the "privilege log" as a whole. Therefore, the undersigned will address the privileges claimed as to each of the 13 documents on the updated Privilege Log dated 03-03-2015, and all further references to "Privilege Log" in this Order will refer to this updated document.

All of the items on the Privilege Log assert attorney client privilege as grounds to withhold individual email communications. Ten (10) emails, which include RJL personnel on the distribution list, additionally claim the ""Co-Client/Joint Client Common Interest" privilege (Privilege Log Items 1, 2, 4, 6, 7, 8, 9, 10, 11, and 13). Of these ten, two additionally claim work product privilege (Privilege Log Items 7, 8). One (1) email claims attorney client privilege alone (Privilege Log Item 3); two (2) emails claim attorney client and work product privilege (Privilege Log Items 5, 12). Textron's privilege log identifies the attorney involved in the majority of these communications as Textron's in-house counsel, John Rupp. Mr. Rupp has provided an affidavit stating that he was contacted by Tim Landsell of RJL to provide legal counsel to RJL relating to the 2005 HSE investigation and that he was acting as counsel to both Textron and to RJL as joint clients during the 2005 HSE investigation. Def's Resp. to Mot. Compel [Dkt. No. 43], Exhibit 1, Rupp Affidavit, ¶¶ 2, 4-5.

Mr. Rupp is also an attorney included on the distribution list of several emails concerning the HSE investigation that were produced by Textron with no claim of privilege.  As it is unclear from the privilege log how these produced communications differ from the allegedly privileged communications with Mr. Rupp, the undersigned reviewed the 13 withheld emails *in camera* to determine (1) what, if any, privileges apply and (2) whether any applicable privileges have been waived by the disclosure of potentially related material.

### A.  Choice of Law Issues

"The availability of a privilege in a diversity case is governed by the law of the forum state." *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, n.26 (5th Cir. 2005);  FED. R. EVID. 501. Therefore, in this matter, the application of the attorney client privilege, any "joint client common interest" privilege, and any waiver of such privileges will be determined by Texas law. *See id.*  In contrast, federal common law governs the work product privilege.  *See N. Am. Specialty Ins. Co. v. Iberville Coatings, Inc.*, No. 99-859, 2014 U.S. Dist. LEXIS 61786, at *3 (M.D. La. Mar. 22, 2002); FED. R. CIV. P. 26(b)(3).

### 1.   Does Attorney Client Privilege Apply Under Texas Law?

The question governing 10 of the 13 withheld emails is whether Texas law allows attorney client privilege or "Co-Client/Joint Client Common Interest Privileges" to attach to communications between the in-house counsel of a parent company and managing personnel of a separate corporate entity.

Texas evidentiary rules define attorney client privilege as follows:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:

(A) **between the client or a representative of the client and the client's lawyer** or a representative of the lawyer;

(B) between the lawyer and the lawyer's representative;

(C) **by the client or a representative of the client, or the client's lawyer or a representative of the lawyer, to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein**;

(D) between representatives of the client or between the client and a representative of the client; or

(E) among lawyers and their representatives representing the same client.

TEX. R. EVID. 503(b) (emphasis added).

Plaintiffs make much of a recent Texas Supreme Court case, *In re XL Specialty Ins. Co.,* 373 S.W.3d 46, 52 (Tex. 2012), which clarified that the "common interest" privilege set out in Rule 503(b)(C), above, is limited to allied litigants during an ongoing litigation, and does not protect communications between parties who are not represented by the same counsel when no lawsuit is pending at the time the communications occurred. *Id.* Whether RJL and Textron could be considered "allied litigants" with respect to the HSE investigation in 2005 is a moot point, however, because *In re XL Specialty Co.* expressly does not change the long-standing Texas law that one attorney may "simultaneously represent[] two or more clients on the same matter." *Id.* (citing PAUL R. RICE, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 4:30 (2011)).

As noted above, Textron's in-house counsel, Mr. Rupp, has provided a sworn affidavit that he was engaged to represent both RJL and Textron as joint clients during the 2005 HSE investigation. Def's Resp. to Mot. Compel [Dkt. No. 43], Exhibit 1, Rupp Affidavit, ¶¶ 2, 4-5.

Texas law permits such joint representation "when all clients consent and there is no substantial risk that the lawyer's representation of one client would be materially and adversely affected by the lawyer's duties to the other." *In re XL Specialty,* 373 at 50 (citing 2 RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 128 (2000)).  Plaintiffs have pointed to no facts in the record that would indicate a substantial risk of irreconcilable conflict in Mr. Rupp's representation of Textron and its subsidiary in the HSE investigation, and Mr. Rupp's affidavit asserts he had the consent of both Textron and RJL to provide legal counsel to both.  Def's Resp. to Mot. Compel [Dkt. No. 43], Exhibit 1, Rupp Affidavit, ¶¶ 2, 4-5.

So long as Mr. Rupp was authorized to represent both RJL and Textron, it is black letter Texas law that both RJL and Textron's "communications made to the attorney for the purpose of facilitating the rendition of legal services to the clients are privileged, except in a controversy between the clients." *In re JDN Real Estate—McKinney L.P.*, 211 S.W.3d 907, 922 (Tex. App.—Dallas 2006, pet. denied).  The undersigned has reviewed all ten (10) of the emails for which the joint client privilege is claimed and agrees that each is a communication between joint clients and their mutual attorney.  Therefore, items 1, 2, 4, 6, 7, 8, 9, 10, 11, and 13 on the Privilege Log are subject to the joint client privilege under Texas law.   As this privilege is sufficient to justify withholding the documents, the undersigned need not consider whether any separate "common interest" privilege applies or whether the work product privilege applies to those joint client privileged documents for which it is claimed (7 and 8).

The remaining documents rely on single-party attorney-client privilege.  Item 3 on the Privilege Log is a strategic communication between a Textron manager and Mr. Rupp concerning responding to the HSE investigation; it is privileged.  Item 5 is an email between Mr. Landsdale and British outside counsel hired by Mr. Landsdale on behalf of RJL.  The attorney-

client privilege thus applies.  *See* TEX. R. EVID. 503(b)(E) (illustrating that a client may hire more than one lawyer and communicate with each of his attorneys without destroying privilege).

Item 12 is a communication between Textron's "in-house counsel, outside counsel, in-house counsel representative, Textron Personnel and insurance carrier representative."  Privilege Log.  Defendants have not met their burden to establish this document is protected under the Texas attorney-client privilege; there is nothing in the privilege log or the document itself that would show whether the insurance carrier was a joint client along with Textron, and Texas law does not recognize a general insurer-insured privilege.  *In re XL*, 373 at 53-54.  The communication, if protected, must fall under federal work product privilege, discussed further below.[2]

## 2.   Waiver Under Texas Law

A question brought up by Plaintiffs in the hearing, and also considered *sua sponte* by this Court, is whether Textron has waived the privilege that would otherwise attach to documents sent by or to John Rupp concerning the HSE investigation, because Textron has already produced several communications regarding the HSE investigation that include Mr. Rupp on the distribution list without any claim of privilege.  "Generally, a party waives the attorney-client privilege when it voluntarily discloses the privileged communication to a third party. When a party waives the attorney-client privilege, it waives the privilege as to all communications that pertain to the same subject matter of the waived communication."  *Summit 6 LLC v. Research In*

---

[2] The undersigned notes that Texas Rule of Civil Procedure 193.3(c) excuses a party from noting on its privilege log "a privileged communication . . . concerning the litigation in which the discovery is requested."   The undersigned has determined this rule does not create a privilege, but simply refers to the procedural obligation to log material that is privileged under other law.   Because Texas rule 193.3(c) does not confer an automatic attorney-client privilege on documents created during litigation, but is merely a procedural rule, the undersigned has determined Federal Rule of Evidence 501 requires examination of  Defendants' claims of privilege concerning the 2015 documents noted on its Privilege Log, notwithstanding that they were created while this litigation has been pending.

*Motion Corp.*, No. 3-11-cv-367-O, 2013 U.S. Dist. LEXIS 95164, *41 (N.D. Tex., June 26, 2013) (citing *Alldread v. City of Grenada*, 988 F.2d 1425, 1434 (5th Cir. 1993); *S.E.C. v. Brad*y, 238 F.R.D. 429, 441 (N.D. Tex. 2006)).

Item 4 on Defendants' Privilege Log appears to have been fully produced to Plaintiffs under the Bates Number TEXTRON 002352 and included as an exhibit by Plaintiffs in these proceedings.[3] Consequently, Item 4 should be produced, as Defendants have waived any privilege they might have claimed regarding this document.

The remainder of the attorney-client privileged emails listed here (Items 1, 2, 3, 5, 6, 7, 8, 9, 10, 11, and 13)  pertain to various drafts and edits of a final communication to the HSE, none of which have been produced or discussed in the record provided to this Court, and internal discussions about coordinating strategic meetings, which do not divulge any of the same content or subject matter disclosed in the emails already produced.  Therefore, the undersigned finds no waiver of the attorney client and/or joint client privileges applicable to Items 1, 2, 3, 5, 6, 7, 8, 9, 10, 11, and 13 of Defendants' Privilege Log.

### 3.  Work Product Privilege Under Federal Law

The document described in Item 12 of Defendants' privilege log is a communication informing Defendants' insurer and outside counsel about developments in the instant case. Federal Rule of Civil Procedure 26(b)(3) protects from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial or by another party or its

---

[3] Document TEXTRON 002352 has been included in the public record of these proceedings as part of Exhibit 11 of Pf.'s Resp. to Mot. Prot. Order [Clerk's Dkt. No. 49].  There is no indication by the filing party—Plaintiffs—that the Response, Exhibit 11, or TEXTRON 002352 should be filed under seal or otherwise treated as confidential.  Any privilege Defendants could have claimed over this particular document has therefore been destroyed by their production of it to the Plaintiffs, without any clawback request, and Plaintiffs' inclusion of the document in the public record.

representative (including the other party's . . . insurer or agent)."  It thus appears that Item 12 falls well within the coverage of the work product privilege under Rule 26(b)(3) and Defendants are entitled to withhold Item 12 pursuant to federal work product privilege.

### B.   Defendants' Request for Fees and Costs

As a sanction under Rule 37 of the Federal Rules of Civil Procedure, Defendants seek their fees and costs to defend their privilege log in the amount of $2,777.50.  Such an award is inappropriate here because Plaintiffs' Motion to Compel was substantially justified.  Fed. R. Civ. P. 37(a)(5)(B).  Under Federal Rule of Civil Procedure 26(b)(5), a privilege log must "describe the nature of the documents . . .  and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Defendants' Privilege Log in this matter simply listed the parties to an email, the date of the email, and the privilege claimed.   The generic descriptions of each email are virtually indistinguishable from each other (e.g., compare Item 7, "Communication between Textron In-House Counsel, Textron Personnel and other Textron related entity personnel" with Item 8, "Communication between Textron In-House Counsel, Textron Personnel and other Textron related entity personnel.")   Given Defendants' failure to provide a log specific enough to demonstrate that a joint client relationship existed and that the communications being withheld pursuant to this relationship were qualitatively different from those disclosed as non-privileged, Plaintiffs' filing of this motion was certainly justified and is not a proper subject for sanctions.

### III.  Motion for Protective Order

As noted above, Plaintiffs seek to depose, via notice to Textron under Federal Rule of Civil Procedure 30, three employees and one former employee of RJL (collectively, the "RJL

personnel"), a British distributor of E-Z-Go carts that is an indirect subsidiary of Textron.  Mot. Prot. Order [Clerk's Dkt. 42], at 2 and Exhibit 1 (Depsotion Notices).  On its face, Plaintiffs' attempt to use Federal Rule of Civil Procedure 30 to notice the depositions of these foreign non-parties seems to be quite a stretch.  Nevertheless, the circumstances surrounding this position give it more weight that it might otherwise carry.  It appears that Textron made multiple representations to Plaintiffs regarding its ability to "set up" the depositions of RJL personnel, which were described by both parties in the hearing and documented in the record.  *See generally* Mot. Prot. [Clerk's Dkt. No. 42], Exhibits 5-10.  These representations, coupled with Textron's apparent close cooperation with RJL in the documentation of the 2005 HSE Investigation, *see, e.g.*, Resp. Mot. Prot. Order [Clerk's Dkt. 49] at Exhibit 11, suggested a relationship of control by Textron over RJL—a perception Textron did little to discourage over a period of several weeks.  In these circumstances, the undersigned finds the Plaintiffs' position regarding the application of Rule 30 deposition notices to RJL personnel as "managing agents" of Textron is a novel, but not unreasonable, argument for the extension of the managing agent doctrine.

For the reasons below, the undersigned declines to accept Plaintiffs' invitation to expand the definition of a managing agent.  Nevertheless, in the interest of equity and fair play, the undersigned requires that Textron exercise its best efforts to extend the offer of a cooperative deposition of the RJL witnesses on the terms previously offered by Textron and RJL until at least the March 20, 2015 deadline for the close of discovery in this matter.

### A. Background

Plaintiffs requested the depositions of the RJL personnel at the end of December and beginning of January; as of January 8, 2015, counsel for Textron represented he was "beginning

the process of getting the UK depositions set up." Mot. Prot. Order [Clerk's Dkt. 42], Exhibit 6, p. 1. He also disclosed that "UK counsel" would be involved. *Id.* Similar discussions continued throughout January, mostly along the lines of the logistics of coordinating schedules. *Id.* at Exhibits 7-10. On January 23, 2015, after expressing frustration with the continued claimed scheduling difficulties, Plaintiffs issued Rule 30 deposition notices to Textron in an attempt to compel the depositions. *Id.* at Exhibit 11. Textron responded that it had no ability to compel these witnesses to appear, as RJL is a separate company organized under British law, and the proper procedure for noticing such depositions would be to follow the Hague Convention protocols. *Id.*

Nevertheless, the parties continued their attempts to work out voluntary depositions. Apparently, in a conference call on February 2, 2015 that included counsel for Textron and British counsel for RJL, an agreement was proposed that the depositions could be taken by agreement if they proceeded under British rules, which are far more restrictive than American deposition rules. *Id.* Plaintiffs made a counterproposal that the depositions should take place in Britain under American rules, a proposal RJL and Textron rejected. *Id.* Having failed to reach agreement, Defendants filed this Motion for Protective Order asserting the Hague Convention protocols, not Federal Rule of Civil Procedure 30(b)(6), are the exclusive means of compelling deposition testimony from these witnesses.

### B.   Rule 30 vs. The Hague Convention

Plaintiffs correctly assert that, ***when a party is subject to the personal jurisdiction of a U.S. Court,*** either the Federal Rules of Civil Procedure or the Hague Convention may be used to effect discovery. *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S.*

*Dist.*, 482 U.S. 522, 544  (U.S. 1987).   Under these circumstances, the trial court has broad discretion to conduct a fact-sensitive inquiry, balancing the needs of the litigation against the interests of international comity.   *Id.*   To that end, even where the Federal Rules of Civil Procedure are potentially applicable to a foreign party, "American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." *Id.* at 546.

Notably, the only basis Plaintiffs have proposed for the application of the Federal Rules (or this Court's jurisdiction) to the proposed U.K. deponents is that they are allegedly managing agents of Textron.   Pf.'s Resp. to Mot. Prot. Order [Clerk's Dkt. No. 49] at 8.   There is no suggestion that any of the individual proposed deponents, who reside in the United Kingdom, are subject to personal jurisdiction in the Western District of Texas.   Nor is there any evidence in the record that RJL, a British distributor, manufactures or sells any products in the United States or otherwise has any contacts that would subject it to the personal jurisdiction of this Court.   *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2852 (2011) (finding that although parent company was subject to the personal jurisdiction of an American court, its foreign subsidiaries had no contacts with the US, such as manufacturing, sales, advertising, or business operations, that would justify personal jurisdiction in the trial court).

Thus, the first inquiry is whether the four proposed deponents can be considered managing agents of Textron for purposes of Federal Rule of Civil Procedure 30.   If they are managing agents, the balancing test described in *Societe Nationale*, 482 U.S. at 544, must be applied to balance the interests of the litigants versus the interests of a sovereign nation in protecting its citizens from foreign discovery that might not be available under that nation's own

laws.  If the deponents are not managing agents of Textron, then no basis has been shown for

applying the Federal Rules of Civil Procedure to non-party citizens of a foreign country, and the

deposition notices are of no effect.  *In re Yasmin and Yaz*, MDL No. 2100, 2011 U.S. Dist.

LEXIS 9623 (S.D. Ill. Aug. 18, 2011).

### 1.   What is a "Managing Agent" for Purposes of a Rule 30 Notice?

An individual does not qualify as a managing agent of a Defendants company "simply by

virtue of the fact that he is an officer of [a subsidiary company]."  *Newmarkets Partners, LLC v.*

*Sal. Oppenheim Jr. & Cie. S.C.A.*, No. 08 Civ. 04213 (WHP) (THK), 2009 U.S. Dist. LEXIS

43435, *3-4 (S.D.N.Y. May 22, 2009).  However, the test for what does make a managing agent

is fact sensitive and evolving; as counsel for Textron pointed out at the hearing, courts have been

known to describe the federal common law that has developed around the "managing agent"

concept as "sketchy."  *See, e.g.*, *Jackson v. Stevens Transp., Inc*., No. 3:14-cv-1416-M, 2015

U.S. Dist. LEXIS 5318, *6 (N.D. Tex. Jan. 15, 2015) (quoting *Founding Church of Scientology*

*of Washington, D.C. v. Webster*, 802 F.2d 1448, 1451, 256 U.S. App. D.C. 54 (D.C. Cir. 1986)).

Plaintiffs suggest that the high degree of control exercised by Textron over the employees

of RJL with regard to the 2005 accident and investigation is dispositive of the issue.  Resp. to

Mot. Prot. Order [Clerk's Dkt. No. 49] at 9-10.  However, the "control" test that appears in other

discovery contexts, such as whether a document is in the "possession or control" of a party, has

no place in the managing agent inquiry.  *Ethypharm SA France v. Abbott Labs*., 271 F.R.D. 82,

90 (D. Del. 2010).  Rather, the factors that have typically been relied on by trial courts to

determine whether an individual qualifies as a managing agent of a party for purposes of a

deposition under Federal Rule 30 include the following:

> [whether] the individual involved is invested by the corporation with
> general powers to exercise his discretion and judgment in dealing with
> corporate matters, whether he or she can be depended upon to carry out
> the employer's direction to give testimony at the demand of a party
> engaged in litigation with the employer, and whether he or she can be
> expected to identify with the interests of the corporation rather than with
> those of the other parties.

*Jackson*, 2015 U.S. Dist. LEXIS 5318, 6-8 (N.D. Tex. Jan. 15, 2015) (citing 8A CHARLES
ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FED. PRAC. & PROC. § 2103
(3d ed.) and collecting cases).

In recent decisions on the "managing agent" issue, the courts have given particular
emphasis to the importance of the employee's responsibilities "with respect to the subject
matter *of the litigation*."  *Bianco v. Globus Med., Inc*., No. 2:12-CV-00147-WCB, 2014
U.S. Dist. LEXIS 28464, *6 (E.D. Tex. Mar. 6, 2014) (emphasis added) (collecting
cases).  For example, in November of 2014, a U.S. trial court hearing a design defect case
found that three Chinese employees of a U.S.-based Defendants corporation were
"managing agents" subject to a Rule 30 deposition notice, because: (1) the three
deponents had extensive discretion and judgment regarding the design of the challenged
product, (2) their interests as direct employees of the Defendants and designers of the
challenged product were aligned with the Defendants', and (3) their employment
relationship and aligned interests made them reliable deponents who could be expected to
testify at the Defendants' request.  *Averkamp v. Swimways Corp.*, No. 13-C-473, 2014
U.S. Dist. LEXIS 160793, *5-6 (E.D. Wis., Nov. 17, 2014).

In contrast, where the proposed deponent does not have a direct employee relationship with the Defendants company and does not have responsibility relating directly to the subject matter of the lawsuit, it is much more difficult to find him aligned with the company's interests in such a way that he can be expected to speak for the company as a "managing agent."   *Jackson*, 2015 U.S. Dist. LEXIS 5318 at *13-14.  In the recent *Jackson* case, the proposed managing agent was an independent contractor whose general duties included training drivers for the Defendants company.  *Id.*  The Defendants was being sued because one of its drivers had allegedly attacked someone while on the job.  *Id.*  The Court found that the independent contractor could not reasonably be a "managing agent" for the Defendants company because (1) he had no role in making training policy and had played no role in training or supervising the specific employee at issue;  (2)  he was not directly employed by the company and the company could not order him to testify; and (3)  "the Court cannot point to any facts that support a finding that Mr. Spratling can be expected to identify with Defendants' interests as opposed to Plaintiffs' in connection with Plaintiffs' allegations regarding his attack by Mr. Carter or Mr. Carter's training on workplace violence policies"  *Id.* at *14.

### a.   RJL Personnel Are Not Rule 30 Managing Agents

Applying the few common principles evident in the widely varied case law on this issue, it simply makes no sense to find that the RJL personnel are "managing agents" of Textron for purposes of discovery in this case.  As a threshold matter, RJL personnel could be managing agents, if at all, only with respect to the events of 2005, not with respect to any facts of the Nester litigation.  With regard to the 2005 incident, there is no evidence any of the RJL personnel had direct responsibility for the design or manufacture of the kick off brake at issue,

and there is no evidence the RJL personnel spoke or acted on behalf of Textron, rather than RJL, in responding to the investigation.  Regarding any possible Rule 30 deposition in this case, there is no evidence Textron can effectively direct the witnesses to testify on its behalf, and there is no evidence that the RJL personnel could now be expected to identify with Textron's position regarding the safety of the kick off brake system.  *See Jackson*, 2015 U.S. Dist. LEXIS 5318 at *13-14.

### i.  Deponents Could Only Be Managing Agents As to 2005 Matter

The undersigned finds the RJL personnel were not managing agents of Textron with respect to any facts of the Nesters' current case.  What Plaintiffs contend is that the RJL personnel are managing agents of Textron as to the issue of Textron's knowledge of and response to the 2005 accident and investigation in the U.K, which is an issue relevant to the Nesters' current case.  Pf's Resp. Mot. Prot. Order [Clerk's Dkt. 49] at 6.

As a threshold matter, the parties have ***not*** cited, and the undersigned is not aware of any case law holding that a person can speak as a managing agent for a corporation in a lawsuit in 2015 based on his role in an unrelated incident in 2005.  The cases examined by the undersigned uniformly query whether the deponent's interests and responsibilities are aligned with the Defendants' in ***this*** litigation, not in a long-past event involving unrelated parties and claims. *See*, *e.g.*, *Jackson* 2015 U.S. Dist. LEXIS 5318 at *6-11 (collecting cases); *Bianco*, 2014 U.S. Dist. LEXIS 28464 at *5-9 (collecting cases).

The practical difficulty of a doctrine recognizing a perpetual, issue-specific managing agent is well-illustrated by the facts of this case.  Even assuming RJL personnel worked hand in glove with Textron in 2005 to address an accident regarding an E-Z-Go shuttle with a kick off

brake system, Textron's counsel represents that RJL no longer sells the type of E-Z-Go product that was at issue in that 2005 accident in the U.K.  Further, counsel represents Tim Landsell, the RJL employee whose name appears on most communications regarding the 2005 HSE investigation, no longer works for RJL.  Thus, even limiting the subject of the managing agent relationship to the 2005 accident and investigation, it seems doubtful that the 2015 version of RJL and its individual personnel would have the kind of knowledge, alignment of interest, and discretionary input into relevant matters expected of a managing agent.

### ii.    No Evidence Any Proposed Deponent Was Ever a Managing Agent

Even supposing, as Plaintiffs contend, that a person can be deposed as a managing agent as to a particular issue whether the deposition takes place in the active dispute or an earlier, unrelated one, the record contains little evidence establishing that any of the deponents were managing agents of Textron with regard to the 2005 accident and HSE investigation.

Plaintiffs have appended unauthenticated internet "bios" of their proposed deponents that include hearsay advertising copy regarding the individuals' roles and RJL's role in the Textron/E-Z-Go corporate family.  *See* Pf's Resp. Mot. Prot. Order [Clerk's Dkt. No. 49] at Exhibits 7-10.  Though not objected to by Defendants, the evidentiary value of these materials is limited.  Plaintiffs substantively rely, however, on the contemporaneous emails written by or sent to the proposed deponents concerning the accident and investigation in 2005.  *Id.* at Exhibit 11.  Plaintiffs contend this correspondence shows a level of control by Textron concerning the information communicated by RJL to the HSE investigators that indicates the proposed deponents were acting as managing agents of Textron with respect to the HSE investigation.  *Id.* at 9-10.  As noted above, however, "control" is not the issue.  *Ethypharm SA France*, 271 F.R.D. at 90.  Far more important are factors such as the degree of relevant responsibility held by the

individual and the degree of alignment of interest that can reasonably be expected between the individual and the Defendants regarding the issues in the current lawsuit. *See Jackson*, 2015 U.S. Dist. LEXIS 5318 at *13-14. These factors weigh heavily against any finding that RJL's personnel were managing agents of Textron in 2005 or could testify as managing agents of Textron in 2015.

First, RJL is a distributor—not a designer or manufacturer of any product containing a kick off brake. *See* Pf's Resp. Mot. Prot. Order [Clerk's Dkt. No. 49], Exhibit 11, at TEXTRON002289. There is no evidence in the record to suggest that any RJL employee had significant corporate responsibility for the design, manufacture, or safer-alternative-design analysis of the product at issue in the 2005 dispute. Rather, the emails included in Exhibit 11 tend to establish that the employees of RJL, the seller, had no technical expertise regarding the design or the manufacture of the product at issue and little or no authority to speak for Textron, the manufacturer, on these issues. *See generally* Exhibit 11. RJL was certainly not acting as a decision-maker for Textron on any of the issues relating to the 2005 accident. *Id.* Thus, unlike the Chinese employees who were managing agents in *Averkamp*, there is no evidence the RJL personnel had discretion and judgment regarding the design of the challenged product. 2014 U.S. Dist. LEXIS 160793 at *5-6. They are far more like the independent contractor in *Jackson*, who had no direct responsibility for any of the training or policies at issue and therefore was not a managing agent with respect to those issues. 2015 U.S. Dist. LEXIS 5318 at *13-14.

Second, though the interests of Textron and RJL were largely aligned, the employees of RJL involved in the UK investigation were acting in the interests of RJL as an independent company, not as agents of Textron. For example, as noted in the discussion of the privilege log in Section II, above, RJL manager Tim Landsdale engaged not only Textron's in-house counsel,

but independent British counsel, with whom he had discussions concerning RJL's potential liability that did not include Textron personnel.  RJL also discussed plans to put further orders for similar models from Textron "on hold in the UK" as a result of the HSE investigation.  *Id.* at TEXTRON002301.  These actions demonstrate RJL was acting on its own behalf, not as an agent of Textron, with regard to the response to the 2005 accident and investigation.

Finally, though RJL has indicated it may be open to agreed depositions, Textron has stated (and the apparent extended attempt to "coordinate schedules" for the deponents may illustrate), that Textron has no ability to compel the witnesses to testify at its behest.  More importantly, on this record, there is no basis to assume that any of the RJL personnel can be "expected to identify with Defendants' interests as opposed to Plaintiffs'" in connection with the relevant issues in this suit—the safety of the kick off brake system as designed and manufactured by Defendants.  *Jackson*, 2015 U.S. Dist. LEXIS 5318 at *14.  Under these circumstances, there is simply no basis to find any of the proposed deponents are managing agents of Textron for any purpose relevant to this lawsuit.

## 2.  The Hague Convention and Equitable Relief

Defendants are correct that the Hague Convention provides the only proper means of compelling testimony from the RJL personnel in this case.  *See In re Yasmin and Yaz*, 2011 U.S. Dist. LEXIS 9623 at *5-6 (S.D. Ill. Aug. 18, 2011) ("ordering an entity to produce a non-employee seems particularly problematic when the witness is not a U.S. citizen and is employed by a foreign entity that does not manufacture or sell its products in the United States.").  The undersigned notes, however, that Defendants represented to Plaintiffs for several weeks that they would "set up" the "U.K. Depositions."  Mot. Prot. Order [Clerk's Dkt. 42], Exhibit 6, p. 1.  While Defendants did explain that RJL was a "separate foreign company and we must go

21

through channels to get [the depositions] all set up," Mot. Prot. Order [Clerk's Dkt. No. 42], Exhibit 9, it appears they omitted to state that RJL was ***not*** subject to Textron's control until after Plaintiffs issued Rule 30 deposition notices to Textron on January 23, 2015.  *Id.* at Exhibit 1, p. 3; Exhibit 2A, p.1.

Plaintiffs have been seeking depositions of RJL personnel for over two months now.  The discovery period in this matter is scheduled to end on March 20, 2015.  Scheduling Order [Clerk's Dkt. No. 16].  Defendants' representation that it could "set up" the depositions reasonably caused Plaintiffs to refrain from initiating procedures under the Hague Convention to obtain these depositions, and it is doubtful that such procedures could be completed within the agreed time frame for discovery now.  Therefore, in the interest of equity, the undersigned orders Textron to hold open the most recent offer made by Textron and RJL concerning cooperative depositions (*i.e.,* depositions taken pursuant to U.K. rules, at a location convenient to the witness, with all protections that would have applied if the witnesses had been served pursuant to the Hague Convention), *see* Def.'s Mot. Prot. Order [Clerk's Dkt. No. 42], Exhibit 2A, Letter of January 28, 2015, until at least the close of discovery pursuant to the Scheduling Order [Clerk's Dkt. No. 16].  The Court further orders Textron to make good faith efforts to coordinate and schedule cooperative depositions of the RJL personnel before the close of discovery pursuant to the terms of this offer, if desired by Plaintiff.  If Textron is unable, after good faith efforts, to obtain RJL's consent to hold its most recent cooperative discovery offer open, the parties are ordered to confer and submit amended agreed proposed dates for the close of discovery that would allow reasonable time for Plaintiffs to complete the depositions using Hague Convention procedures, if desired by the Plaintiffs.

### 3.   Attorney's Fees and Costs Are Not Appropriate

Textron has, again, requested its attorneys' fees and costs incurred in seeking this Protective Order.   For the reasons discussed in Section III.B.2, above, concerning equitable relief, an award of fees and costs is inappropriate here.   Defendants' supplementation of their discovery responses with RJL documents, coupled with Defendants' representations that Textron would "set up" the "U.K. depositions," contributed to Plaintiffs' reasonable impression that RJL was subject to Textron's control and its managers could be deposed pursuant to Rule 30. Plaintiffs' position that, in the alternative, RJL's personnel were managing agents of Textron for purposes of the 2005 accident and investigation is novel, but not unreasonable.   The sanction of fees and costs is not warranted here.

## IV.      Motion for Reconvened 30(b)(6) Deposition

Plaintiffs contend Textron's untimely supplementation of the RJL emails and the fact that Textron's corporate representative was himself unfamiliar with these documents necessitate a second 30(b)(6) deposition on the issue of the 2005 accident and investigation. The undersigned is inclined to agree.

Federal Rule of Civil Procedure 30(b)(6) requires a corporate representative designated on a particular topic to "testify about information known or reasonably available to the organization" concerning that topic.   It is undisputed that Mr. Fisher was designated to testify as Textron's corporate representative on topics including the 2005 accident and investigation. *See* Pf's Mot. Compel 30(b)(6) Representative [Clerk's Dkt. 49] at Exhibit 6. It is further undisputed that: (1) Plaintiffs requested documents concerning the 2005 accident and investigation several months before this deposition; (2) Defendants announced the existence of supplemental

documentation from their subsidiary, RJL, at least a week prior to Mr. Fisher's deposition; and (3) Defendants did not produce any relevant materials until the actual start of the deposition. *Id.* at 12.

Textron represented at the hearing that there were multiple logistical reasons for the delay in production. While the undersigned takes Textron's explanation of its good faith efforts at face value, the fact remains that not only was Plaintiffs' counsel unable to review the documents prior to the deposition, but ***Mr. Fisher*** testified in his deposition that he had been unable to review them, as well. *Id.* at Exhibit 4, p. 238. Moreover, Mr. Fisher claimed he could not remember key details regarding the issues covered in those documents, because so much time had passed. *Id.* at 234-235. As it is Textron's burden to produce a witness who is able to testify on the information reasonably available to the organization, and Mr. Fisher was clearly unprepared to do so, the Court concludes Textron failed to meet its obligations under Rule 30(b)(6). *Resolution Trust Corp. v. S. Union Co., Inc.*, 985 F.2d 196, 197 (5th Cir. 1993).

As noted above, however, Textron explained at the hearing that the delay in producing the documents was related in large part to various unavoidable logistical difficulties—not any intent to withhold information from Plaintiffs or evade its duties under Rule 30(b)(6). The Court finds no monetary sanction under Federal Rule of Civil Procedure 37 is appropriate in these circumstances for the following reasons:

(1)      Textron acted in good faith to supplement its discovery responses by contacting its U.K. subsidiary, RJL, to obtain the relevant documents, and had little control over the timing of RJL's response;

24

(2)  Textron has already offered Plaintiffs the opportunity to redepose Mr. Fisher on the issues contained in the late-produced discovery; and

(3)  Textron has represented to the Court that Mr. Fisher has now had the opportunity to read these materials and refresh his memory of events, and is the Textron representative most knowledgeable about the 2005 accident and investigation.

Nevertheless, in view of the upcoming discovery deadline and in recognition of the fact that Textron's logistical difficulties have significantly inconvenienced Plaintiffs, the Court will require that the reconvened Rule 30(b)(6) deposition of Mr. Fisher take place in Austin, Texas (or another location convenient to Plaintiffs) on or before **March 20, 2015** (unless otherwise mutually agreed by the parties).

### CONCLUSION

In accordance with the foregoing, it is hereby **ORDERED** that:

Plaintiffs' Motion to Compel Production of Documents [Clerk's Dkt. No. 41] is DENIED in PART and GRANTED in PART.

- Defendants are ORDERED to produce Item 4 on Defendants' Privilege Log within **five (5) business days of the entry of this Order**.

- Plaintiffs' Motion to Compel is DENIED with respect to Items 1-3 and 5-13 on Defendants' Privilege Log.

- Defendants' request for fees and costs in connection with this Motion is DENIED.

Defendants Textron, Inc.'s Motion for Protective Order and to Vacate Plaintiffs' Notices of Intent to Take Depositions of Non-Party Aliens in the United Kingdom and Request for

Attorney's Fees and Expenses [Clerk's Dkt. No. 42] is GRANTED in PART and DENIED in PART:

- Defendants' Motion for Protective Order is GRANTED.  It is ORDERED that Plaintiffs' Notices of Intent to Take the Depositions of Richard Tyrell, Rupert Price, Richard Comely, and Tim Lansdell are hereby QUASHED and VACATED.

- Defendants are ORDERED to use their best efforts to facilitate cooperative depositions of Richard Tyrell, Rupert Price, Richard Comely, and Tim Lansdell on the terms most recently offered by Textron and its subsidiary, Ransomes Jacobsen, Ltd. (RJL) (*i.e.,* depositions taken pursuant to U.K. rules, at a location convenient to the witness, with all protections that would have applied if the witnesses had been served pursuant to the Hague Convention),  on or before the close of discovery on March 20, 2015.

- If Defendants cannot obtain consent from RJL, despite good faith efforts, to continue to offer cooperative depositions on these terms, the parties shall cooperate to determine an amended discovery cutoff that will reasonably accommodate the use of Hague Convention procedures to obtain the depositions of Richard Tyrell, Rupert Price, Richard Comely, and Tim Lansdell, if desired by Plaintiffs.

- Defendants' request for fees and costs in connection with this Motion is DENIED.


Plaintiffs'  Alternative  Motion  to  Compel  the  Designation  of  a  Proper  30(b)(6) Representative [Clerk's Dkt. No. 49]  is GRANTED.

- **On or before March 20, 2015** (unless another time period is agreed to by all parties), Defendants are ORDERED to produce Mr. Jim Fisher as the 30(b)(6) Corporate Representative for Textron for deposition in Austin, Texas, or any other  location selected as convenient by Plaintiff.

- Mr. Fisher shall be prepared to answer questions relating to Topics 71-73 and 77 of his 30(b)(6) Designation (as modified by this Court's Order of December 5, 2014 [Clerk's Dkt. No. 28]).

- Mr. Fisher shall be prepared to answer questions relating to Textron's production of documents provided by its subsidiary, RJL, concerning Topics 71-73 and 77.

- Each party shall bear its own fees and costs relating to the continuation of this Rule 30(b)(6) deposition.

So ORDERED this the 9th  day of March, 2015.

_____

United States Magistrate Judge
Mark Lane