IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| VIRGINIA NESTER and ROBERT SCOTT NESTER, INDIVIDUALLY and AS NEXT FRIENDS OF C.N. and S.N., MINORS | § § § § § | |
| | | CASE NO. 1:13-CV-00920-LY |
| PLAINTIFFS, | § § | JURY TRIAL DEMANDED |
| V. | § | |
| TEXTRON, INC. d/b/a E-Z-GO, UNITED RENTALS, INC. f/k/a RSC HOLDINGS, INC. and/or RSC EQUIPMENT RENTAL, | § § § | |
| DEFENDANTS | § | |

**E-Z-GO DIVISION OF TEXTRON, INC.'S MOTION TO EXCLUDE THE LIFE CARE PLAN PREPARED BY DR. T. WALTER HARRELL, Ph.D. AND TO EXCLUDE ALL TESTIMONY AND OTHER EVIDENCE AT TRIAL REGARDING THE CALCULATIONS/OPINIONS CONTAINED IN DR. HARRELL'S LIFE CARE PLAN ON THE GROUNDS THAT DR. HARRELL IS NOT QUALIFIED TO OFFER OPINIONS REGARDING LIFE EXPECTANCY AND ON THE GROUNDS THAT DR. HARRELL'S CALCULATIONS/OPINIONS ARE IRRELEVANT AND UNRELIABLE**

E-Z-GO Division of Textron, Inc. ("Textron" or "Defendant") files this Motion to Exclude the Life Care Plan prepared by Dr. T. Walter Harrell, Ph.D. ("Dr. Harrell") and to Exclude all Testimony and other Evidence at Trial Regarding the Calculations/Opinions contained in Dr. Harrell's Plan on the Grounds that Dr. Harrell is not qualified to offer an opinion regarding the life expectancy of Mrs. Nester and on the grounds that Dr. Harrell's

**E-Z-GO DIVISION OF TEXTRON, INC.'S MOTION TO EXCLUDE
THE LIFE CARE PLAN PREPARED BY DR. T. WALTER HARRELL, Ph.D.**     Page 1

Calculations/Opinions based upon the U.S. Vital Statistics tables are Irrelevant and Unreliable, and, in support of same, respectfully shows the Court as follows:

## I.
## Background Facts

The undisputed medical evidence in this case establishes that Plaintiff Virginia Nester sustained a C5-C7 fracture and consequent spinal cord injury on December 5, 2011 and that, as a consequence, Mrs. Nester was rendered tetraplegic.[1] Dr. Harrell is Plaintiffs' expert in the field of Life Care Planning. As Plaintiffs' life care planning expert, Dr. Harrell prepared a life care plan for Virginia Nester in which he sets out his opinions regarding the expenses associated with various medical and medically related needs that he opines Mrs. Nester will have for the remainder of her life due to her spinal cord injury and consequent quadriplegia. A copy of Dr. Harrell's report is attached as Exhibit 1 to this motion.

In his plan, Dr. Harrell admits that life expectancy estimates provided by peer reviewed research and statistical data are almost universally lower than life expectancy of the general population (and observes that the only exception to this finding relates to individuals who have already attained 80 years of life, which exception is not applicable to this case). *See* Exhibit 1 at p. 32; *see also id.* at p. 1 noting that Mrs. Nester was 54 years old as of the preparation of Dr. Harrell's report on January 14, 2015. Then, rather than utilizing the available, widely accepted

---

[1] It is likewise undisputed that Mrs. Nester sustained her injuries in an accident while using a 2001 E-Z-GO Workhorse cart to lead cattle from one pasture to another; that she drove through a pasture honking the horn of the cart so as to entice the cattle to follow her; and that, then, as the cattle approached, she exited and walked directly in front of the cart, leaving the operator key in the "on" position, and a bag of cow feed sitting on the floorboard of the cart near the accelerator pedal. One or more of the cows then pushed or pulled the bag of cow feed off onto the accelerator pedal of the cart causing the cart to move forward and strike Mrs. Nester.

statistical data and research he references in his report, Dr. Harrell projects a normal life expectancy of 83.37 years for Mrs. Nester based upon U.S. Vital statistics publications utilized for the general population of U.S. women as a whole, rather than the statistics available for women, such as Mrs. Nester, who have sustained a C5-C7 level spinal cord injury. *See* Exhibit 1 at p. 32-37.

Textron moves to exclude Dr. Harrell's life care plan and to exclude all testimony and other evidence at trial regarding the calculations/opinions contained in Dr. Harrell's Plan on the grounds that Dr. Harrell is not qualified to offer any opinion regarding life expectancy and on the grounds that such calculations/opinions are irrelevant and unreliable because Dr. Harrell failed to account for Plaintiffs' spinal cord injury or any other known variable in his life expectancy figure.

## II.

## Applicable Law

In the Fifth Circuit, proffered expert testimony is admissible only if: (1) the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. *Nunn v. State Farm Mut. Auto. Ins. Co.,* 2010 U.S. Dist. LEXIS 61740, 2010 WL 2540754, at *2 (N.D. Tex. June 22, 2010) (citing *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)).

To be relevant, "expert testimony [must] 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Daubert v. Merrell Dow Pharms.,* 509 U.S. 579, 591, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). "Relevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.,* 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert,* 509 U.S. at 593); *see also Rule 702(d)*

(requiring that "expert has reliably applied the principles and methods to the facts of the case"); and *Texokan Operating, Inc. v. Hess Corp.*, Civil Action No. H-13-2866, 2015 U.S. Dist. LEXIS 6764, *13, (S.D. Tex. January 21, 2015) *citing, Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012). In other words, the proponent of the expert testimony must demonstrate that there is an analytical "fit" between the methodology used and the conclusion drawn. *Johnson v. Arkema, Inc.*, 685 F.3d at 461, *citing Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) (just because a methodology is acceptable for some purposes, it may not be acceptable for others, and a court may not admit evidence when there is simply too great an analytical gap between the data and the opinions proffered); *Harang v. Schwartz*, Civil Action No. 13-0058, 2014 U.S.Dist. LEXIS 113675, *27-28. (August 15, 2014) (The Court must also determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence--in other words, whether it is relevant.); *Diggs v. Citigroup, Inc.*, 551 Fed.Appx. 762, 765 (5th Cir. 2014) (an expert's opinions should not be admitted if it does not apply to the specific facts of the case); *Chan v. Coggins*, 294 Fed.Appx. 934, 939 (5th Cir. 2008) (expert opinion rejected as unreliable in part because the expert did not: (1) follow the basic analytic framework of the scientific method; (2) conduct any basic tests of his assumptions; or (3) work with concrete facts positioning, speed, tire direction, etc. despite the experts assumption that these were among the factors that led to his conclusion.)

"Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Knight*, 482 F.3d at 352 (quoting *Daubert*, 509 U.S. at 592-93); *see also Rule* 702(c) (requiring that "testimony [be] the product of reliable principles and methods"). Expert testimony "must constitute 'more than subjective belief or unsupported

**E-Z-GO DIVISION OF TEXTRON, INC.'S MOTION TO EXCLUDE**
**THE LIFE CARE PLAN PREPARED BY DR. T. WALTER HARRELL, Ph.D.**     **Page 4**

speculation.'" *Nunn,* 2010 U.S. Dist. LEXIS 61740, 2010 WL 2540754, at *2 (quoting *Daubert,* 509 U.S. at 590). The court focuses on the expert's methodology, not the conclusions generated by it. 2010 U.S. Dist. LEXIS 61740, *at* *4 (citing *Watkins v. Telsmith, Inc.,* 121 F.3d 984, 989 (5th Cir. 1997)). If, however, "there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered," the court may exclude the testimony as unreliable. *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997); *see also Johnson v. Arkema, Inc.,* 685 F.3d 452, 460-61 (5th Cir. 2012); *Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 278-79 (5th Cir. 1998).

To establish reliability under *Daubert,* an expert bears the burden of furnishing 'some objective, independent validation of [his] methodology.'" *Brown v. Ill. Cent. R.R. Co.,* 705 F.3d 531, 536 (5th Cir. 2013) (quoting *Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 276 (5th Cir. 1998)). "The expert's assurance that he has utilized generally accepted [principles] is insufficient." *Id.* (quoting *Moore,* 151 F.3d at 276)."Courts must be arbiters of truth, not junk science and guesswork." *Huss v. Gayden,* 571 F.3d 442, 459 (5th Cir. 2009)(citing *Daubert,* 509 U.S. at 596-97). Thus, the Court is not required to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 157, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999); *see Ellis v. U.S.,* 673 F.3d 367, 373 (5th Cir 2012) (*citing Jelinek v. Casas,* 328 S.W.3d 526, 536 (Tex. 2010)); *Huss, 571* F.3d at 460; *Matosky v. Manning,* 428 F. App'x 293, 298 (5th Cir. 2011).

### III.

### Grounds for Motion

As noted above, Dr. Harrell has admitted that statistical data and research exist for accurately estimating life expectancy for individuals similar to Mrs. Nester with respect to age

and type and level of injury, among other factors. Exhibit 1 at p. 32. Dr. Harrell further admits that the available data regarding life expectancy for victims of spinal cord injury has been gathered for a number of decades and that, "when properly evaluated, this information can provide a basis from which to project life expectancy estimates." *Id.* He further admits that more precise projections can be made for specific persons "by matching such characteristics of the individual as exact neurological level of injury and Frankel or ASIA grade, gender, ventilator status, length of post-injury survival to date, presence of pre-existing or unrelated concurrent medical conditions, motivation in self-care, and availability of good medical care to the largest possible sample population." *Id.* Available records provide information relating to all of the aforementioned variables, with the exception of the last two. *See* Aff. Of Dr. Paul Kornberg, Exhibit 2 and Exhibits 2A (Dr. Kornberg's CV) and 2B (Dr. Kornberg's Report at p. 2) thereto. Information as to the last two variables Dr. Harrell mentioned is also available to Dr. Harrell inasmuch as he has personally met with the plaintiff and purports to have worked collaboratively with one of principle treating doctors to determine her medical needs. *See* Exhibit 1 at p. 1.

Notwithstanding his admissions, Dr. Harrell fails, in setting Mrs. Nester's life expectancy at 83.37 years to utilize the available, relevant statistics and data pertaining to the life expectancy of Mrs. Nester as an individual with a spinal cord injury or to consider any of the variables he admits are pertinent to her life expectancy. Rather, in his report/plan, Dr. Harrell bases all of his calculations on the average life expectancy of U.S. women of Mrs. Nester's age and ethnicity -- without any consideration of or adjustment to her life expectancy based upon her spinal cord injury or the statistics and research relating to any of the variables he cites as pertinent to her life expectancy. Exhibit 1 at pp. 32-37.

Further, as Defendant's medical life expectancy expert, expert Dr. Paul Kornberg points out, Dr. Harrell's assertion, made to bolster his use of the U.S. Vital Statistics tables, that mortality rates "have steadily declined since 1973," while technically true, is misleading as it has no bearing on the life expectancy of individuals with spinal cord injury, such as Mrs. Nester, who have survived the first year after injury. According to the very research cited by Dr. Harrell, The National Spinal Cord Injury Statistical Center, University of Alabama at Birmingham, 2013 Annual Statistical Report,

> Life expectancies remain substantially below normal, particularly for persons with tetraplegia and ventilator dependency. Moreover, although mortality rates during the first post-injury year have decreased steadily since the 1970s, annual mortality rates after the first post-injury year have not changed since the early 1980s. Therefore, although general population life expectancy is increasing, life expectancy for person with spinal cord injury who have survived the first year after injury has remained constant, and the gap in life expectancy between spinal cord injury and the general population of comparable age, sex, and race is increasing....

*Id.; see* Exhibit 2 and Exhibit 2(B) at p. 2-3.

Dr. Harrell's report and its conclusions lack "fit" with the facts of this case and are not relevant to this case because all of his calculations and medical needs opinions are based on the average annual life expectancy for women in the entire general population of the United States of the same age and gender as Mrs. Nester without regard to the any of the substantial differentiating factors effecting Mrs. Nester's life expectancy.

The burden is on Plaintiffs to show that Dr. Harrell's opinions meet the requirements of *Daubert* and Federal Rule of Evidence 702. Because Dr. Harrell is not qualified to offer an opinion on Mrs. Nester's life expectancy and did not take Mrs. Nester's spinal cord injury into account when calculating a life expectancy projection for her in his plan, Plaintiffs cannot

establish that Dr. Harrell's conclusions as to the expenses associated with her potential future medical needs are reliable or that they will assist the trier of fact. Dr. Harrell's opinions and calculations are nothing more than his own *ipse dixit*. *See Rinker v. Carnival Corp.*, Case No. 09-23154-CIV- 2012, U.S. Dist. LEXIS 1908 *3 (S.D. Fla. Jan. 6, 2012) (Where the court excluded the calculations and medical needs opinions of the Plaintiff's vocational rehabilitation, employment, ergonomics, and economics expert, reasoning that his opinions and calculations regarding the plaintiff's future medical needs lacked 'fit' with the facts of the case in that they were based on the life expectancy of a healthy 62-year-old woman, not a 62-year-old woman with stage three colon cancer, as were the circumstances of the plaintiff in the case). As such, Dr. Harrell's life care plan and his opinions and calculations regarding the expenses associated with Mrs. Nester's anticipated future medical care should be excluded from evidence in this case.

## I.  Prayer

For all of the foregoing reasons, Textron prays that the that the Court enter an order excluding the Life Care Plan prepared by Dr. Harrell from evidence in this case and excluding all testimony and other evidence at trial regarding the calculations/opinions contained in Dr. Harrell's report on the grounds that Dr. Harrell is not qualified to offer an opinion regarding the life expectancy of Mrs. Nester and/on the grounds that Dr. Harrell's calculations/opinions based upon the U.S. Vital Statistics tables are irrelevant and unreliable. In addition, Textron prays for such other relief, both at law and in equity, to which it may show itself justly entitled to receive.

RESPECTFULLY SUBMITTED,

*[signature]*
DALE G. MARKLAND
  Texas State Bar No. 12988500
  dmarkland@marklandhanley.com
TARA E. HANLEY
  Texas State Bar No. 00784205
  thanley@marklandhanley.com
DELWIN E. HERVEY
  Texas State Bar No. 90001632
  dhervey@marklandhanley.com
MARKLAND HANLEY
2200 Ross Avenue, Suite 4100W
Dallas, TX 75201
469.341.3633
469.341.3640 (fax)

Brittan L. Buchanan
Texas State Bar No. 03285680
bbuchanan@bddglaw.com
Buchanan Dimasi Dancy Grobouski
9600 Great Hills Trail
Suite 300 West
Austin, Texas 78759
Phone: (512) 225-2822
Fax: (512) 225-2801

ATTORNEYS FOR E-Z-GO DIVISION OF
TEXTRON, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been forwarded to all known counsel of record in accordance with the Federal Rules of Civil Procedure on this 21st day of July, 2015.

Sean E. Breen
Howry Breen & Herman, L.L.P.
1900 Pearl Street
Austin, Texas 78705-5408

*Attorneys for the Plaintiffs*


Brittan L. Buchanan

**E-Z-GO DIVISION OF TEXTRON, INC.'S MOTION TO EXCLUDE
THE LIFE CARE PLAN PREPARED BY DR. T. WALTER HARRELL, Ph.D.**     Page 9

bbuchanan@bddglaw.com
Buchanan Dimasi Dancy Grobouski
9600 Great Hills Trail
Suite 300 West
Austin, Texas 78759
Tel. (512) 225-2822
Fax (512) 225-2801

*Local Counsel for E-Z-Go Division of Textron, Inc.*

Tara E. Hanley

**E-Z-GO DIVISION OF TEXTRON, INC.'S MOTION TO EXCLUDE
THE LIFE CARE PLAN PREPARED BY DR. T. WALTER HARRELL, Ph.D.**   Page **10**