IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| VIRGINIA NESTER and ROBERT SCOTT NESTER, Individually and as Next Friend of C.N. and S.N., minors, | § § § § | |
| *Plaintiffs*, | § § | Cause No. 1:13-CV-00920-LY |
| vs. | § § | |
| TEXTRON, INC., d/b/a E-Z-GO; and UNITED RENTALS, INC., f/k/a RSC Holdings, Inc., and RSC Equipment Rental, | § § § § | JURY DEMANDED |
| *Defendants*. | § | |

---

**PLAINTIFFS' MOTION TO EXCLUDE OPINIONS OF DR. DAVID BIZZAK**

---

Plaintiffs Virginia (Gini) Nester and Robert Scott Nester, individually and as next friends of C.N. and S.N., minors, file this motion to exclude opinions of Dr. David Bizzak, an expert witness designated by Defendant Textron, Inc. d/b/a E-Z-Go (Textron), and in support thereof would respectfully show as follows:

## I.    INTRODUCTION

Dr. Bizzak and Textron have refused to disclose or produce facts and data on which Dr. Bizzak relied to formulate his opinions, as required by the Federal Rules of Civil Procedure. Further, at least two of those opinions do not meet the requirements for admissibility under Rule 702 of the Federal Rules of Evidence. Dr. Bizzak's opinion regarding the ability of the parking brakes of *other* vehicles to prevent movement from a fully depressed accelerator pedal is not

relevant to any issue in this suit, and his opinion concerning the risk involved in using a golf cart is not reliable under the law of this circuit.

The Nesters therefore respectfully request an order excluding Dr. Bizzak's opinions or, in the alternative, an order excluding the two opinions identified above, and for such other and further relief to which the Nesters may be justly entitled.

## II.     BACKGROUND

On December 5, 2011, Plaintiff Gini Nester was struck and paralyzed by a 2001 E-Z-GO Workhorse ST350 utility cart (Utility Cart) at the Nesters' ranch in Buda, Texas.  That afternoon, Mrs. Nester drove the Utility Cart across the ranch with a 50-lb. bag of cattle cubes sitting on the cart's passenger-side floorboard, stopped the cart and set the parking brake, and exited the cart to open a gate separating two fields.  She was struck and run over immediately after opening the gate and turning around to walk back to the Utility Cart; the bag of cattle cubes had toppled onto the Utility Cart's accelerator pedal, which kicked off the cart's parking brake and allowed the cart to move and accelerate forward without an operator present.

Textron has designated Dr. Bizzak to offer opinions regarding Textron's design of the E-Z-GO Workhorse ST350 and aspects of the chain of causation leading to Mrs. Nester's injury.[1]

## III.     ARGUMENTS AND AUTHORITIES

### A.     Legal standards

Under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, the district court functions as a gatekeeper for proposed expert testimony to be presented to the jury.[2]  Such testimony is admissible "only if the proponent demonstrates

---

[1] *See* Textron's expert designation and disclosure (Doc. No. 55), at 2; Expert report of Dr. David Bizzak (Mar. 13, 2015), at 21–24, attached as Exhibit A.

[2] *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).

that: (1) the expert is qualified; (2) the evidence is relevant to the case; and (3) the evidence is reliable."[3]   The proponent of an expert witness's testimony bears the burden to prove by a preponderance of the evidence that the proposed testimony is relevant and reliable and the witness is qualified.[4]

A district court's decision to exclude expert testimony is reviewed, like other evidentiary rulings, for an abuse of discretion.[5]   A district court abuses its discretion only if its determination is based on a clearly erroneous assessment of the facts or view of the law.[6]

**B.     Dr. Bizzak's opinions should be excluded in their entirety because he has refused to produce information on which he relief to formulate those opinions.**

In his deposition, Dr. Bizzak claimed he has developed and maintained a database of golf cart-related injuries from queries directed against the data contained in the National Electronic Injury Surveillance System (NEISS) database, operated by the federal Consumer Products Safety Commission.[7]   (The NEISS is a national probability sample of injuries associated with consumer products, compiled from patient information collected from emergency visits at hospitals in the United States and its territories.[8])   Dr. Bizzak further testified that he relied on his database and the information it contains in reaching his opinions in this lawsuit.[9]   But Dr. Bizzak has stridently refused to produce his database.[10]

---

[3] *Amin-Akbari v. City of Austin*, 52 F. Supp. 3d 830, 838 (W.D. Tex. 2014) (Ezra, J.).

[4] *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *United States v. Griffith*, 118 F.3d 318, 322 (5th Cir. 1997) (citing *Daubert* and noting an expert witness's qualifications must be proved by a preponderance of the evidence).

[5] *French v. Allstate Indem. Co.*, 637 F.3d 571, 577 (5th Cir. 2011).

[6] *Nunez v. Allstate Ins. Co.*, 604 F.3d 840, 844 (5th Cir. 2010).

[7] *See* Deposition of Dr. David Bizzak (June 3, 2015), at 45:17–25, 46:23–49:4, attached as Exhibit B.

[8] *National Electronic Injury Surveillance System (NEISS)*, UNITED STATES CONSUMER PRODUCTS SAFETY COMMISSION, http://www.cpsc.gov/en/Research--Statistics/NEISS-Injury-Data/ (last visited July 20, 2015).

[9] *See* Ex. B (Bizzak deposition), at 70:11–71:8, 71:10–22, 71:24–25, 72:25–73:2, 72:15–74:6.

[10] *See* Ex. B (Bizzak deposition), at 72:5–6, 76:22–77:7.

Further, Dr. Bizzak testified in his deposition that Textron has received copies of the entries in Dr. Bizzak's database on several occasions, from 2006 to 2013.[11]  The entries from Dr. Bizzak's database are responsive to requests for production propounded by the Nesters seeking information Textron possessed regarding reports it has received of golf cart injuries,[12] but Textron refuses to produce those entries.[13]

Textron is under an obligation to both disclose the facts and data considered by Dr. Bizzak in forming his opinions[14] and to produce documents responsive to proper discovery requests.[15]  A failure to do so results in the exclusion of any withheld evidence.[16]  The Nesters therefore move to exclude Dr. Bizzak's opinions and any evidence premised on his withheld database under Rule 37(c)(1) of the Federal Rules of Civil Procedure.

### C.      Two of Dr. Bizzak's opinions should be excluded from evidence at trial.

To the extent Dr. Bizzak's opinions are not excluded for failure to disclose facts or data on which he relied, the Nesters move to exclude two of his opinions: (i) that the parking brakes of other carts (not the 2001 E-Z-GO Workhorse ST350) would ***not*** prevent those carts from moving if the cart's accelerator pedal when it is fully depressed; and (ii) the alleged accident frequency rate of incidents similar to Mrs. Nester's injury is very low compared to other socially acceptable activities like swimming in a hot tub.

---

[11] *See* Ex. B (Bizzak deposition), at 64:20–65:13.

[12] *See* Textron's First Amended Objections and Responses to Virginia Nester's First Set of Requests for Production (Jan. 23, 2015), at RFP Nos. 3, 19, 25, 27, 28, attached as Exhibit C; Textron's Objections and First Supplemental Responses to Scott Nester's First Set of Requests for Production and First Set of Interrogatories (Dec. 10, 2014), at RFP Nos. 75, 104(g), attached as Exhibit D.

[13] *See* Ex. B (Bizzak deposition), at 45:17–46:22.

[14] Fed. R. Civ. P. 26(a)(2)(B)(ii).

[15] Fed. R. Civ. P. 34(b)(2).

[16] Fed. R. Civ. P. 37(c)(1).

    **1.    Dr. Bizzak's opinion concerning the ability of other carts to overpower their parking brakes would not be helpful to the jury.**

The relevance, or helpfulness, of an expert's opinion is evaluated under the same standard as any other evidence: Rule 401.[17]  An expert witness's opinion or testimony must have a tendency to make a fact of consequence more probable or less probable than it would be without the opinion or testimony.[18]

At trial, the Nesters intend to offer evidence that the absence of one of their proposed safer alternative designs—the elimination of the Utility Cart's kick-off brake system by removing the linkage between the accelerator pedal and the parking brake—was both a producing and proximate cause of their injuries.[19]  Specifically, the Nesters intend to offer evidence that, if the parking brake is fully engaged, a full application of the Utility Cart's accelerator pedal would not overpower the Utility Cart's parking brake and the vehicle would not move.  Therefore, the absence of Textron's kick-off brake system would have prevented the Nesters' injuries.[20]

In other words, if the linkage between the accelerator pedal and the parking brake did not exist, the fact that a 50-lb. bag of cattle cubes fell on the Utility Cart's accelerator pedal would not have caused the vehicle to move.  The Nesters will offer evidence that: (i) Textron designed the E-Z-GO Workhorse ST350's parking brake to prevent the vehicle from moving when the accelerator pedal is fully depressed; (ii) that the Utility Cart's parking brake in fact operated as designed, by preventing movement when the accelerator pedal was fully depressed; and (iii) an

---

[17] *See, e.g.*, *United States v. Marquez*, 236 F. App'x 75, 78 (5th Cir. 2007) (noting that the proper analysis for the relevance of an expert's opinion is under Rule 401); *Hafstienn v. BMW of N. Am., LLC*, 194 F. App'x 209, 212 (5th Cir. 2006) (citing and applying Rules 401–403 to the relevance of an expert's opinion).

[18] *See* Fed. R. Evid. 401.

[19] *See, e.g.*, The Nesters' first amended complaint (Doc. No. 37), at ¶¶ 21, 89, 102, 104.

[20] *See, e.g.*, The Nesters' first amended complaint (Doc. No. 37), at ¶ 21.

exemplar 2001 E-Z-GO Workhorse ST350's parking brake also prevented that vehicle from moving when the accelerator pedal was fully depressed.

To rebut this evidence—which was supported by a member of Textron's design team for the E-Z-GO Workhorse ST350[21]—Textron has offered an opinion from Dr. Bizzak that he conducted "tests" on *other* vehicles to determine if the parking brakes for *those* vehicles would prevent the vehicles from moving if their accelerator pedals were fully depressed.[22]  The other vehicles "tested" by Dr. Bizzak to formulate this opinion included a Cushman utility cart and a John Deere Gator.[23]  Based on the alleged outcome of these "tests" on *other* carts, Dr. Bizzak is of the opinion the ***Utility Cart's*** parking brake would not have prevented movement of the vehicle if the accelerator pedal was fully depressed, and therefore removing the vehicle's kick-off brake system would not have prevented Mrs. Nester's injury.[24]

This particular evidentiary issue is whether the absence of the Nesters' proposed safer alternative design—the removal of the linkage between the accelerator pedal and the parking brake in the Utility Cart to eliminate Textron's kick-off brake system—was a producing and proximate cause of the Nesters' injuries.  Dr. Bizzak's opinions concerning the ability of the parking brakes for *other* vehicles to overpower a fully depressed accelerator pedal and prevent movement of the vehicle would not be helpful to the jury at trial.  All of Dr. Bizzak's "tests" involved different models than the Utility Cart and were manufactured at different times than the Utility Cart.[25]  The ability of ***another*** model vehicle's parking brake to overpower its fully depressed accelerator pedal

---

[21] *See* Deposition of Jim Fisher (Sept. 11, 2014), at 230:3–232:25, attached as Exhibit E.

[22] *See* Ex. B (Bizzak deposition), at 87:25–88:25, 199:23–25, 200:2–12, 201:19–202:4.

[23] Ex. B (Bizzak deposition), at 215:8–20, 216:12–18, 216:24–218:4, 218:14–220:15, 220:19–221:25.

[24] Ex. B (Bizzak deposition), at 199:23–25, 200:2.

[25] *See* Ex. B (Bizzak deposition), at 215:8–20, 216:12–18, 216:24–218:4, 218:14–220:15, 220:19–221:25.

has no tendency to make it more probable or less probable that the ***Utility Cart's*** parking brake would have prevented that vehicle's fully depressed accelerator pedal from moving that vehicle. Therefore, that opinion of Dr. Bizzak's is not relevant, will not be helpful to the jury at trial, and is not admissible.

Because this opinion of Dr. Bizzak's is inadmissible, the opinions and testimony on which this inadmissible testimony is based—specifically, Dr. Bizzak's opinion that the ***Utility Cart's*** parking brake would be overpowered by a fully depressed accelerator pedal—should also be excluded.  Aside from Dr. Bizzak's irrelevant and unhelpful opinion that ***other*** carts' parking brakes would be overpowered by their accelerator pedals, Dr. Bizzak has absolutely no basis to assert the ***Utility Cart's*** parking brake would be overpowered by a fully depressed accelerator pedal as well.

To the extent these opinions of Dr. Bizzak's are deemed helpful in any way—which they are not—the Nesters move to exclude these opinions under Rule 403 of the Federal Rules of Evidence.  Any probative value these opinions may have is substantially outweighed by the danger that they will confuse the issues at trial and mislead the jury.[26]  The introduction of these opinions could allow the jury to draw the conclusion that the Utility Cart's parking brake would NOT prevent that vehicle from moving if its accelerator pedal is fully depressed, a fact that is not supported by any evidence, aside from Dr. Bizzak's *ipse dixit* opinion.

Because Dr. Bizzak's opinion regarding the ability of ***other*** carts' parking brakes to prevent movement when the carts' accelerator pedals are fully depressed would not be helpful to the jury, it is inadmissible under Rule 401.  In the alternative, the admission of such an opinion from Dr.

---

[26] *See* FED. R. EVID. 403.

Bizzak presents the strong possibility of confusion of the issues and misleading of the jury, and should be excluded under Rule 403.

      **2.**      **The vagueness and inaccuracy of Dr. Bizzak's opinion concerning the risk associated with using a utility cart renders it unreliable.**

In his expert report, Dr. Bizzak purported to calculate the "accident frequency rate" of the type of incident that rendered Mrs. Nester a quadriplegic was 0.21 incidents for every 100,000 cart-years of use.[27]  He then compared that fictional statistic to, among other things, the accident frequency rates of mountain biking, hot tubs, and ladders.[28]  Dr. Bizzak's purported calculation and any related testimony, including a comparison of accident frequency rates to other activities, is unreliable and therefore inadmissible.

An analysis of the reliability of a proposed expert witness's opinion is a fact-specific inquiry.[29]  Though an expert witness's opinion need not be shown to be ***correct*** in order to be admissible, the opinion must be ***reliable***.[30]  The expert witness's findings and conclusions must be based on the scientific method, which requires objective, independent validation of the expert's methodology.[31]

The Supreme Court has recognized the traditional list of *Daubert* factors for expert reliability (testing, peer review, rate of error, etc.) may not be applicable in every situation.[32]  The advisory committee notes for Rule 702 have gathered examples of additional factors federal courts have employed that are more appropriate for Dr. Bizzak's statistical opinion:

---

[27] *See* Ex. A (Bizzak report), at 10.

[28] Ex. A (Bizzak report), at 10–11.

[29] *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004).

[30] *See Moore*, 151 F.3d at 276.

[31] *Moore*, 151 F.3d at 276.

[32] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150–51 (1999).

- Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion; and

- Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting.[33]

The Fifth Circuit has noted that an expert is permitted to form opinions from extrapolations of data, but the conclusion reached must be reasonable and scientifically valid; "courts are free to reject a theory based on extrapolation when there is simply too great an analytical gap between the data and the opinion proffered."[34]

To calculate an alleged accident frequency rate of 0.21 incidents/100,000 cart-years, Dr. Bizzak identified what he considered to be similar incidents to Mrs. Nester's injury, used the statistical weighting prescribed by the NEISS database, and divided the results by the number of carts on the market over the period of time reviewed, to estimate the numbers of incidents that occur throughout the country.[35]  Dr. Bizzak did not disclose all of the components of the formula for his accident frequency rate, but an approximation appears below:

$$\frac{\text{32.85 (statistical weight of 1991 incident) + 38.84 (statistical weight of 2013 incident)}}{\text{24 years of production data (1990–2013) / 8 years (estimated service life of a utility cart) * undisclosed ``EZGO production data'' / 50\% market share by EZGO}} = \frac{\text{71.69 statistical weight of two incidents}}{\text{33,491,872 cart-years}} = \frac{\text{0.21 incidents}}{\text{100,000 cart-years}}$$

### a.    The numerator used in Dr. Bizzak's equation is unreliable.

For the numerator of this equation, the weighted number of incidents similar to Mrs. Nester's injury, Dr. Bizzak's selection of only two incidents is patently ridiculous—his overly

---

[33] FED. R. EVID. 702 advisory committee's notes, 2000 amends.

[34] *Johnson v. Arkema, Inc.*, 685 F.3d 452, 460–61 (5th Cir. 2012) (internal quotation omitted).

[35] *See* Ex. A (Bizzak report), at 10.

restrictive parameters practically require the victim's name to be "Virginia" in order to qualify as a similar incident.  His selection methodology to reach only two similar incidents was: (1) the golf cart must be unattended with no human being in the passenger compartment; (2) vehicle movement must be initiated by an inanimate object falling on the accelerator pedal; and (3) movement of the inanimate object onto the accelerator pedal must be caused by an external force other than gravity.[36]  Dr. Bizzak's selection method is directly at odds with binding Fifth Circuit law:

> [T]he 'substantially similar' predicate for the proof of similar accidents is defined, again, by the defect (or, as we have also termed it, the product) at issue . . . For the purposes of proving other accidents in order to show defendants' awareness of a dangerous condition, the rule requiring substantial similarity of those accidents to the accident at issue should be relaxed . . . Any difference in the circumstances surrounding these occurrences go merely to the weight to be given the evidence.[37]

The defect at issue is inadvertent operation or unintended acceleration as a result of Textron's kick-off brake system; any incidents meeting those two criteria qualify as "similar" under the law of this circuit.  Dr. Bizzak's selection of only two incidents is not even supported by Textron's own witnesses: Textron's corporate representative testified Textron has been ***sued*** at least four times related to unintended acceleration and the kick-off parking brake system.[38]

### b.      The denominator used in Dr. Bizzak's equation is unreliable.

For the denominator of "cart-years," Dr. Bizzak simply fabricates numbers.  There is no basis cited for his assumption that the service life of a utility cart is 8 years.[39]  In fact, that assumption is belied by the Utility Cart itself, which was manufactured in 2001 and was ten years old when Mrs. Nester was injured in 2011.  There is no explanation of what "EZGO production

---

[36] Ex. A (Bizzak report), at 9.

[37] *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1083 (5th Cir. 1986).

[38] Ex. E (Fisher deposition), at 259:14–19.

[39] Ex. A (Bizzak report), at 10.

data" Dr. Bizzak is referencing, or how Dr. Bizzak translated that data into 16,745,936 cart-years over a 24-year period.[40]  Further, there is absolutely no basis for Dr. Bizzak's assumption that E-Z-GO has a 50% share of the golf cart market.[41]

Dr. Bizzak's purported calculation of his accident frequency rate is a textbook example of unjustifiably extrapolating from an accepted premise to an unfounded conclusion.[42]  The numerator of his rate excludes clearly qualifying data, and the denominator was largely constructed out of whole cloth by assuming statistically important numbers with absolutely no supporting evidence.

This calculated rate, and Dr. Bizzak's opinions flowing from that rate, are not reasonable and scientifically valid.[43]  Because there is "simply too great an analytical gap between the data and the opinion proffered,"[44] this opinion of Dr. Bizzak's is unreliable and, therefore, inadmissible.

## IV.    CONCLUSION

The Nesters respectfully request an order excluding the opinions identified above for Dr. Bizzak and any documents or testimony regarding those opinions, and for such other and further relief to which the Nesters may be justly entitled.

---

[40] Ex. A (Bizzak report), at 10.

[41] Ex. A (Bizzak report), at 10.

[42] *See* FED. R. EVID. 702 advisory committee's notes, 2000 amends.

[43] *See Johnson*, 685 F.3d at 460–61.

[44] *See Johnson*, 685 F.3d at 460–61.

Dated: July 22, 2015

Respectfully submitted,

HOWRY BREEN & HERMAN, L.L.P.

_____

Sean E. Breen
sbreen@howrybreen.com
State Bar No. 00783715
1900 Pearl Street
Austin, Texas 78705-5408
Tel. (512) 474-7300
Fax (512) 474-8557

Craig A. Nevelow
cneleow@w-g.com
State Bar No. 14933580
WRIGHT & GREENHILL, P.C.
221 West 6th Street, Suite 1800
Austin, Texas 78701
Tel. (512) 476-4600
Fax (512) 476-5382

*Attorneys for Plaintiffs Virginia Nester and Robert Scott Nester, Individually and as Next Friend of C.N. and S.N., minors*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document was delivered on July 22, 2015, in accordance with Rule 5(b)(2) of the Federal Rules of Civil Procedure, to the parties listed and in the manner indicated below:

| | |
|---|---|
| Dale Gene Markland | ☐  In person |
| dmarkland@marklandhanley.com | ☐  Left at office or dwelling |
| Tara E. Hanley | ☐  Registered or certified mail or delivery service |
| thanley@marklandhanley.com | ☐  Left with court clerk |
| Delwin Eugene Hervey | ✓  Electronic means |
| dhervey@marklandhanley.com | ☐  Other: _____ |

- 12 -

MARKLAND HANLEY LLP
2200 Ross Avenue Suite 4100W
Dallas, TX 75201
Tel. (469) 341-3633
Fax (469) 341-3640

Brittan L. Buchanan
bbuchanan@vbllp.com
VAN OSSELAER & BUCHANAN, LLP
9600 Great Hills Trail, Suite 300 West
Austin, TX 78759
Tel. (512) 225-2822
Fax (512) 225-2801

*Attorneys for Defendant Textron, Inc.,*
*d/b/a E-Z-GO*

| | |
|---|---|
| Paul Clark Aspy | ☐ In person |
| aspy@namanhowell.com | ☐ Left at office or dwelling |
| NAMAN HOWELL SMITH & LEE, PLLC | ☐ Registered or certified mail or delivery service |
| 8310 Capital of Texas Highway, Suite | ☐ Left with court clerk |
| 490 Austin, TX 78731 | ✓ Electronic means |
| Tel. (512) 479-0300 | ☐ Other: _____ |
| Fax (512) 474-1901 | |

*Attorneys for Defendant United Rentals,*
*Inc., f/k/a RSC Holdings, Inc., and RSC*
*Equipment Rental*

_____
Sean E. Breen