UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| VIRGINIA NESTER and ROBERT SCOTT NESTER, individually and as next friends of C.N. and S.N., minors, | § § § § | No. 1:13-CV-920-DAE |
| Plaintiffs, | § § | |
| vs. | § § | |
| TEXTRON, INC. d/b/a E-Z-GO, | § § | |
| Defendant. | § | |

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
AMENDED MOTION FOR SUMMARY JUDGMENT

Before the Court is an Amended Motion for Summary Judgment filed by Textron, Inc. d/b/a E-Z-GO ("Textron").  (Dkt. # 103.)  The Court held a hearing on the Motion on December 14, 2015.  At the hearing, Dale Markland, Esq., represented Textron, and Sean Breen, Esq. represented Plaintiffs.  After careful consideration of the supporting and opposing memoranda and the arguments presented at the hearing, the Court, for the reasons that follow **GRANTS IN PART AND DENIES IN PART** Textron's Amended Motion for Summary Judgment.

1

<u>BACKGROUND</u>

Plaintiffs Virginia and Scott Nester (collectively, "Plaintiffs"),

purchased a used E-Z-GO Workhorse ST350 ("Workhorse"), a utility vehicle, on

January 20, 2005.  (Dkt. # 124-33, Ex. 31.)  The Workhorse is a golf cart-like

vehicle that uses the ignition and braking systems found on many golf carts.  The

ignition switch, operated using a key, turns on the vehicle's electrical system.

("Newbold Rpt.," Dkt. # 124-9, Ex. B at 5.)  The engine does not start until the

accelerator is depressed, and releasing the accelerator turns off the engine.  (<u>Id.</u>)

Additionally, the Workhorse uses a "kick-off" brake system in which the parking

brake is physically linked to the accelerator pedal such that depressing the

accelerator automatically releases the parking brake.  (<u>Id.</u> at 6; "Fisher Dep. 1,"

Dkt. # 124-2, Ex. 1 at 63:6–13; "Service Manual," Dkt. # 124-5, Ex. 4.)

On December 5, 2005, Plaintiff Virginia Nester ("Mrs.

Nester") loaded a 50-pound bag of cattle cubes onto the passenger-side floorboard

of the Workhorse.  ("Virginia Nester Dep. 1," Dkt. # 124-29, Ex. 27 at 6:7–10,

42:24–45–19; "Scott Nester Dep.," Dkt. # 124-30, Ex. 28 at 40:25–41:4.)  She then

drove the Workhorse into the pastures on Plaintiffs' ranch to feed the cattle and

move them from one field to another.  ("Virginia Nester Dep. 2," Dkt. # 124-31,

Ex. 29 at 220:16–221:1.)  While driving through the fields, Mrs. Nester sounded

the Workhorse's horn to call the cattle. (Virginia Nester Dep. 1 at 63:13–21,

67:25–68:3.)  Upon approaching a gate separating two fields, she stopped the Workhorse a few feet from the gate, applied the parking brake, and exited the vehicle to open the gate.  (Id. 70:10–71:19.)  Mrs. Nester did not turn the key to the "off" position before exiting the vehicle.  (Id. 70:17–20.)

While Mrs. Nester was walking to open the gate, the bag of cattle cubes fell onto the Workhorse's accelerator pedal, releasing the parking brake and causing the Workhorse to accelerate forward.  (Newbold Rpt. at 7–8.)  The vehicle struck Mrs. Nester, whose back was turned while opening the gate, knocking her to the ground and running her over.  (Virginia Nester Dep. 1 at 74:12–78:21; Virginia Nester Dep. 2 at 221:7–17.)  Mrs. Nester was unable to move or call for help until her husband found her more than an hour later.  (Virginia Nester Dep. 2 at 221:14–222:17.)  Mrs. Nester suffered fractures of vertebrae in her neck, which required two surgeries to repair.  (Virginia Nester Dep. 1 at 110:7–15.)  Her injuries have rendered her quadriplegic and in need of constant medical care.  (Id. 117:3–120:18; Virginia Nester Dep. 2 at 228:2–233:7.)

Plaintiffs filed suit in this Court on October 17, 2013, invoking the Court's diversity jurisdiction.  (Dkt. # 1.)  On January 16, 2015, Plaintiffs filed an Amended Complaint against Textron alleging claims for design and marketing defects, negligence, gross negligence, breach of warranty, duty to recall, and res ipsa loquitor.  (Dkt. # 37 ¶¶ 88–114.)

Textron filed the instant Amended Motion for Summary Judgment on

August 7, 2015.  (Dkt. # 103.)  Plaintiffs filed a Response on September 1, 2015.

("Resp.," Dkt. # 132.)  Textron filed its Reply on September 9, 2015.  ("Reply,"

Dkt. # 135.)

<u>LEGAL STANDARD</u>

A court must grant summary judgment when "the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a); <u>see also</u> <u>Meadaa v. K.A.P.</u>

<u>Enterprises, L.L.C.</u>, 756 F.3d 875, 880 (5th Cir. 2014).  "Substantive law will

identify which facts are material."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

248 (1986).  A dispute is only genuine "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  <u>Id.</u>

In seeking summary judgment, the moving party bears the initial

burden of demonstrating the absence of a genuine issue of material fact.  <u>Celotex</u>

<u>Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  If the moving party meets this burden,

the nonmoving party must come forward with specific facts that establish the

existence of a genuine issue for trial.  <u>Distribuidora Mari Jose, S.A. de C.V. v.</u>

<u>Transmaritime, Inc.</u>, 738 F.3d 703, 706 (5th Cir. 2013) (quoting <u>Allen v. Rapides</u>

<u>Parish Sch. Bd.</u>, 204 F.3d 619, 621 (5th Cir. 2000)).  "Where the record taken as a

whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Hillman v. Loga, 697 F.3d 299, 302 (5th Cir. 2012).

In deciding whether a fact issue has been created, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Kevin M. Ehringer Enters. v. McData Servs. Corp., 646 F.3d 321, 326 (5th Cir. 2011) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." United States v. Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012) (quoting Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003)).

## DISCUSSION

Textron has moved for summary judgment on each of Plaintiffs' claims, arguing that it is not liable as a matter of law and that Plaintiffs have failed to set forth sufficient evidence to establish a dispute of material fact as to any of their claims for relief.  (Dkt. # 103 at 5–6.)  The Court will discuss each of Plaintiffs' claims in turn.

## I.    Design Defect

To succeed on a design defect claim, a plaintiff must show that "(1) the product was defectively designed so as to render it unreasonably

5

dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which plaintiff seeks recovery." Timpte Indus., Inc. v. Gish, 286 S.W.3d 306, 311 (Tex. 2009); Tex. Civ. Prac. & Rem. Code § 85.002(a).

Textron argues that it established that the Workhorse was not defectively designed as a matter of law, citing generally to the affidavit of expert witness Dr. David Bizzak ("Dr. Bizzak").  (Dkt. # 103 at 8.)  The affidavit to which Textron cites states only that "[t]he 2001 E-Z-Go Workhorse cart at issue in this case is not defectively designed, i.e. it is not unreasonably dangerous considering the utility and risk, for the reasons set forth in my expert report." ("Bizzak Aff.," Dkt. # 103-1, Ex. 1 ¶ 3.)

On the other hand, Plaintiffs have submitted sufficient evidence to establish a genuine dispute of fact as to whether the Workhorse was unreasonably dangerous, whether a safer design existed, and whether the defect was a producing cause of the injury.

A.   Unreasonably Dangerous

In determining whether a product is unreasonably dangerous as designed, the factfinder must consider the utility of the product and the risk involved in its use.  Am. Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420, 432 (Tex. 1997).  The factors relevant to this determination include:

6

(1) The utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use;

(2) The availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive;

(3) The manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs;

(4) The user's anticipated awareness of the dangers inherent in the product and their avoidability because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions; and

(5) The expectations of the ordinary consumer.

Id.  These "factors are evaluated holistically; no single factor needs to be proven on its own, so long as all factors working together point to a finding of unreasonable dangerousness."  Goodner v. Hyundai Motor Co., Ltd., 650 F.3d 1034, 1041 (5th Cir. 2011).  Unreasonable dangerousness is generally a question of fact for the jury, and "only becomes a matter of law if reasonable minds cannot differ."  Id. (citing Hernandez v. Tokai Corp., 2 S.W.3d 251, 260 (Tex. 1999)).

Plaintiffs have submitted sufficient evidence to establish a genuine dispute of fact as to whether the kick-off brake system renders the Workhorse unreasonably dangerous.  Textron has submitted expert testimony that the kick-off brake system prevents wear and damage to the parking brake by preventing an operator from driving the cart while the parking brake is engaged.  ("Bizzak Rpt.," Dkt. # 103-1, Ex. 1.B at 7.)  Plaintiffs' expert evidence suggests that the kick-off

7

brake system, which allows inadvertent contact with the accelerator, creates a significant likelihood of severe injury or death.  (Newbold Rpt. at 13–14, 26; "Vigilante Rpt.," Dkt. # 124-10, Ex. B at 7–8.)  Warnings provided in the owner's manual and the testimony of Textron's corporate representative further indicate that Textron itself recognizes the potential for grave injury resulting from inadvertent operation of the kick-off parking brake system.  (Dkt. # 124-7; "Moore Dep.," Dkt. # 124-3 at 102:2–103:1.)  For example, the owner's manual has a warning stating that "depressing the accelerator will release the parking brake and cause the vehicle to move which could result in severe personal injury or death." (Dkt. # 124-6.)

Plaintiffs have also provided expert testimony that a safe substitute product exists that is capable of meeting the same need at a reasonable cost— specifically, removing the mechanical linkage between the accelerator and the parking brake so that depressing the accelerator does not release the parking brake. (Newbold Rpt. at 17–19, 26.)  Plaintiffs' evidence indicates that removing the linkage between the accelerator and the parking brake would actually decrease the cost of manufacturing by approximately $75 per vehicle without seriously impairing the usefulness of the Workhorse.  (Id. at 18–19, 22; Moore Dep. 49:21– 25.)  Plaintiffs have also submitted expert testimony that an average Workhorse user is unlikely to be aware of the hazard of unintended acceleration created by the

kick-off brake system, in part because the vehicle appears to be "off" when the accelerator pedal is released and the engine stops.  (Vigilante Rpt. at 19–20.) Finally, Plaintiffs have submitted evidence that the existing warnings and instructions do not significantly increase users' awareness of the danger.  (Id. at 21.)

While Textron has submitted contrary evidence with regard to several of these factors, the Court may not make credibility determinations or weigh the evidence on a motion for summary judgment.  Reeves, 530 U.S. at 150.  Plaintiffs have thus provided sufficient evidence to survive summary judgment with respect to each of the risk-utility factors weighing in favor of a finding that the Workhorse's kick-off brake system renders the vehicle unreasonably dangerous. This evidence, viewed in the light most favorable to Plaintiffs as the nonmoving parties, is sufficient to create a genuine dispute of material fact.  Textron is therefore not entitled to summary judgment on this basis.

B.   Existence of a Safer Design

A "safer alternative design" is defined as a product design other than the one actually used that in reasonable probability,

(1) Would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and

9

(2) Was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.

Tex. Civ. Prac. & Rem. Code § 85.005(b).  A plaintiff must show that "the safety benefits from its proposed design are foreseeably greater than the resulting costs, including any diminished usefulness or diminished safety."  Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 337 (Tex. 1998).

As noted above, Plaintiffs have set forth evidence of an alternative design: removing the linkage between the accelerator and the parking brake such that depressing the accelerator does not release the parking brake.  (Newbold Rpt. at 17–19.)  Textron does not contest that such a design was economically and technologically feasible at the time the Workhorse was designed.  Instead, Textron argues that Plaintiffs have failed to show that the design alternative does not create other dangers of equal or greater magnitude.  Textron cites the fact that Plaintiffs' engineering expert, Herbert Newbold ("Mr. Newbold"), did not conduct a statistical analysis or study comparing the injury rate for the existing design with their proffered alternative.  (Dkt. # 103 at 9–10.)

Mr. Newbold's expert report states that removing the linkage between the accelerator and parking brake would have prevented the accident that caused Mrs. Nester's injuries, and that the kick-off feature is "not important or integral to the function and/or utility of the vehicle."  (Newbold Rpt. at 18.)  Newbold also

states that "incorporating the linkage between the accelerator and brake pedal would actually have significantly reduced the cost of the vehicle while increasing the safety and maintaining the function/utility." (Id. at 22.) Plaintiffs' evidence, while less than conclusive, is sufficient to create a genuine dispute of material fact with regard to whether removing the link between the accelerator and parking brake would be safer than the Workhorse as currently designed.

Textron's only evidentiary support that the Plaintiffs' design alternative would create dangers of equal or greater magnitude than the undeniably grave risks created by the current system is with Dr. Bizzak's expert report. (Bizzak Rpt. at 15.). However, Dr. Bizzak determined only that a vehicle without the kick-off brake system "will accelerate from a stopped position at roughly the same rate whether or not the parking brake is applied" compared to a vehicle with the kick-off brake system. (Id.) Additionally, Textron has cited no authority for the proposition that statistical analysis is required to compare the safety of two design alternatives, and the Court has found none. The Court therefore finds that Plaintiffs have established a genuine dispute of fact as to whether a safer alternative design existed at the time of the Workhorse's manufacture, and Textron is thus not entitled to summary judgment on this basis.[1]

---

[1] Textron does not argue that Plaintiffs have failed to produce evidence that the alleged defect was a producing cause of Mrs. Nester's injury. The Court will therefore only briefly note Plaintiffs have submitted such evidence. Mr.

Accordingly, the Court **DENIES** the Defendant's Motion for Summary Judgment for the design defect claim.

II.   Marketing Defect

"A marketing defect occurs when a defendant knows or should know of a potential risk of harm presented by the product but markets it without adequately warning of the danger or providing instructions for safe use." Ethicon Endo-Surgery, Inc. v. Meyer, 249 S.W.3d 513, 516 (Tex. App. 2007).  "Generally, a manufacturer has a duty to warn if it knows or should know of the potential harm to a user because of the nature of its product."  Grinnell, 951 S.W.2d at 426.  "A product may be unreasonably dangerous if a manufacturer fails to warn of a foreseeable risk arising from the use of the product, and the lack of adequate warnings or instructions renders an otherwise adequate product unreasonably dangerous." McLennan v. Am. Eurocopter Corp., Inc., 245 F.3d 403, 427 (5th Cir. 2001) (quoting Coleman v. Cintas Sales Corp., 40 S.W.3d 544, 549–50 (Tex. App. 2001)).  A marketing defect cause of action consists of five elements:

(1) A risk of harm is inherent in the product or may arise from the intended or reasonably anticipated use of the product;

---

Newbold's report opines that the kick-off brake system was a producing cause of Mrs. Nester's injuries. (Newbold Rpt. at 25, 26.)  Mr. Newbold's testing found that an exemplar Workhorse vehicle would not move forward when the parking brake was disconnected from the accelerator, the parking brake was engaged, and the accelerator was depressed.  ("June 22 Newbold Rpt.," Dkt. # 124-9, Ex. C at 2.)

(2) The product supplier actually knew or should have reasonably foreseen the risk of harm at the time the product was marketed;

(3) The product possessed a marketing defect

(4) The absence of the warning or instructions rendered the product unreasonably dangerous to the ultimate user of the product; and

(5) The failure to warn or instruct constituted a causative nexus in the product user's injury.

Degrate v. Exec. Imprints, Inc., 261 S.W.3d 402, 411 (Tex. App. 2008).

### A. Existence of a Duty to Warn

For all marketing defect causes of action, a threshold question is whether or not a duty to warn exists. The existence of a duty to warn of dangers or instruct as to the proper use of a product is a question of law. Grinnell, 951 S.W.2d at 426. "Generally, a manufacturer has a duty to warn if it knows or should know of the potential harm to a user because of the nature of its product." Id. "The determination whether a manufacturer has a duty to warn is made at the time the product leaves the manufacturer." Caterpillar, Inc. v. Shears, 911 S.W.2d 379, 383 (Tex. 1995). However, two exceptions to this duty exist.

First, under Texas law there is no duty to warn where the risks associated with a particular product are matters "within the ordinary knowledge common to the community." Id. (quoting Joseph E. Seagram & Sons, Inc. v. McGuire, 814 S.W.2d 385, 388 (Tex. 1991) (holding that the dangers and risks of excessive alcohol consumption are within the ordinary knowledge of the

community and thus do not impose a duty to warn)).  The Texas Supreme Court

has emphasized that the standard for finding common knowledge as a matter of

law is "strict" and has held that the term "common knowledge" encompasses

"those facts that are so well known to the community as to be beyond dispute."

Seagram, 814 S.W.2d. at 288.  Thus, the exception applies only in the limited

circumstance where the common knowledge is "so patently obvious and so well

known to the community generally, that there can be no question or dispute

concerning their existence."   Brune v. Brown Forman Corp., 758 S.W.2d 827,

830−31 (Tex. App. 1988).

      Second, and relatedly, there is no duty to warn of "obvious risks

because a readily apparent danger serves the same function as a warning."

Hanus v. Tex. Utilities Co., 71 S.W.3d 874, 880 (Tex. App. 2002).  "The

obviousness of a risk is determined from the perspective of the average user of the

product."  Sauder Custom Fabrication, Inc. v. Boyd, 967 S.W.2d 349, 349 (Tex.

1998).  Whether a danger is readily apparent is an objective question for the court

to determine.  Hanus, 71 S.W.3d at 880.

      Textron argues that it had no duty to warn for two reasons.  First,

Textron argues that Mrs. Nester was aware that the brake would release if the

accelerator pedal was pressed and that the cart would move, invoking the second

exception to the duty to warn.  (Dkt. # 103 at 14.)  Specifically, Mrs. Nester

testified to the following:

> Question: Okay.  And . . . you understood that when you pressed on
> the accelerator pedal, that you would release the parking brake so that
> you could move; is that correct?
>
> Answer: Yes.

(Virginia Nester Dep. 1 at 9:21-25.)  Second, Textron argues that it had no duty to

warn because the risk of unintended acceleration due to an inanimate object falling

onto the accelerator was not foreseeable at the time the Workhorse left its

premises.  (Dkt. # 103 at 15-16.)  To support this allegation, Textron relies on the

affidavits of Dr. Bizzak (Bizzak Aff., ¶ 7) and James Fisher ("Fisher Aff.,"

Dkt. # 103-2, Ex. 2 ¶ 3) who concluded it was not foreseeable to Textron that Mrs.

Nester would create the hazardous situation by a chain of events.  (Dkt. # 103 at

14-16).

       In response, Plaintiffs argue that the Defendant owed a duty to warn

because the "hazard is not simply that the parking brake releases when the operator

depressed the accelerator pedal, but that the parking brake could be released and

the vehicle can start and move if the accelerator pedal is depressed even when the

operator is not in the vehicle."  (Dkt # 132 at 39.)  Plaintiffs provide evidence that

Mrs. Nester lacked awareness that an inanimate object pressing on the accelerator

pedal could make the Workhorse go forward:

> Question: . . . If you had thought about it, you would have known if you did the same thing with an object as opposed to your foot and pressed on the accelerator pedal with an object or put an object on the accelerator pedal, that the cart would also go forward; correct?
>
> Answer:  I have no idea that would have ever occurred to me.

(Virginia Nester Dep. 1 at 20: 13-22.)  Plaintiffs also point to the deposition of Textron employee James Fisher who testified that it was not easy for a customer to detect and know that unanticipated acceleration could occur with the pop-off brake system.  ("Fisher Dep. 1," Dkt. # 124-2 at 93:14-25.)  Further, as evidence that the risk of an inanimate object releasing the pop-off brake was not obvious, Plaintiffs point to one of the Defendant's expert witnesses who testified that it was not a foreseeable risk that a bag of cattle cubes would be tipped over onto the accelerator pedal, causing the parking brake to release and the vehicle to operate without a driver behind the wheel.  ("Tim O'Byrne Dep.," Dkt. # 124-6 at 8:15-21.)

Plaintiffs also present evidence that Textron was aware of the hazard of unintended acceleration at the time the Workhorse left the manufacturer. (Dkt.  # 42-44.)  First, Plaintiffs present marketing materials issued by Textron depicting the Workhorse on a ranch, near cattle, and with an equipment box on the passenger seat. (Dkt. #124-15, Ex. 14.)  Second, Plaintiffs point to a warning label on the Workhorse that indicates "depressing the accelerator will release the parking brake and cause the vehicle to move which could result in severe personal injury or death." (Dkt. # 124-7, Ex. 6.)  Third, Textron expert witness Tim O'Byrne

16

testified that an object falling onto a vehicle's accelerator pedal and causing the

vehicle to move forward was a foreseeable risk of a vehicle with a kick off brake

system.  (O'Byrne Dep. at 21:9-16.)  Specifically, Tim O'Byrne testified to the

following:

> Question: You would agree with me that with a foot-activated ignition
> system, there is a risk that an object could fall onto the accelerator
> pedal and start the vehicle?

> Answer: Yes.

(Id.)

Based on the evidence in the record viewed in a light most favorable

to the Plaintiff as the nonmoving party, the Court cannot conclude that the risk of

injury from the kick-off brake system is common knowledge or obvious. Textron

has not shown that there is no genuine dispute of material fact regarding the duty to

warn and it has not objectively shown that one of the exceptions applies. The

exceptions to the duty to warn apply only in limited circumstances where the

hazard is "so patently obvious and so well known to the community generally, that

there can be no question or dispute concerning their existence."  Brune, 758

S.W.2d at 830-31.  Finally, Textron's own marketing materials (Dkt. #124-15, Ex.

14) and its warning about the kick-off brake system (Dkt. # 124-7, Ex. 6) indicate

that it knew of the hazard at issue in this case, or that it was at least foreseeable.

Accordingly, since no exception applies, the Court finds that as a matter of law Textron owed a duty to warn of the risk of unintended acceleration.

B.  Whether the Product was Marketed Without Adequate Warning

1.  The Risk of Harm Inherent in the Product

The first element that a plaintiff must prove to succeed on a marketing defect cause of action is (1) "a risk of harm is inherent in the product or may arise from the intended or reasonably anticipated use of the product." DeGrate, 261 S.W.3d at 411.

Textron does not directly address whether there is genuine issue of material facts surrounding the risk of harm inherent in the Workhorse.  Thus, as the movant, Textron failed to "meet its burden of demonstrating that there is no genuine issue of material fact on [this] element." Celotex Corp., 477 U.S. at 325. Plaintiffs, however, have set forth particular facts to indicate there is a genuine issue for trial.  First, Plaintiffs cite Dr. Vigilante's affidavit ("Vigilante Aff.," Dkt. # 124-10 ¶¶ 4-20) and his expert report (Vigilante Rpt. at 1-24.)  Specifically, Dr. Vigilante's expert report notes that the unintended acceleration of the vehicle due to the inadvertent contact of the accelerator by a person, object, or other thing is a significant hazard associated with the use of the Workhorse.  (Vigilante Rpt. at 7.) Further, Dr. Vigilante concluded that "the risk of unintended acceleration . . . is increased when carrying or storing cargo in the passenger area of the

18

[Workhorse]." (Id.)  These facts are evidence of a risk of harm inherent in the utility vehicle.

Accordingly, Plaintiffs have met their burden of demonstrating that a genuine dispute of material fact exists as to the first element.

2.  Whether the Product Supplier Knew or Should Have Reasonably Foreseen the Risk of Harm at the Time the Product was Marketed.

The second element of a marketing defect claim is that the product supplier actually knew or should have reasonably foreseen the risk of harm at the time the product was marketed.  DeGrate, 261 S.W.3d at 411.  Foreseeability is measured in terms of those dangers which are reasonable to anticipate.  USX Corp. v. Salinas, 818 S.W.2d 473, 484 (Tex App. 1991).  Yet, "foreseeability does not require that the actor anticipate the particular accident or the precise manner in which the injury will occur once [the actor] has created a situation through his negligence."  Rodriguez v. Moerbe, 963 S.W.2d 808, 818 (Tex. App. 1998).  Instead, the Texas Supreme Court has repeatedly stated that "foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable."  Mellon Mortg. Co. v. Holder, 5 S.W.3d 654, 655 (Tex. 1999).  A plaintiff may prove knowledge or foreseeability of danger by: (1) evidence of similar accidents or other complaints; (2) presentation of post-accident warnings; (3) presentation of recall letters; (4) evidence of governmental

standards; (5) expert testimony, lay testimony, or documentary evidence to show

information about risks available to the defendant; and (6) reliance on well-

established presumptions.  Salinas, 818 S.W.2d at 473.

Textron asserts that the risk of harm at issue was not reasonably

foreseeable.  (Dkt. # 103 at 16.)  To support this argument, Textron points the

Court to two affidavits: the Bizzak Affidavit (Bizzak Aff., ¶ 7) and the Fisher

Affidavit.  (Fisher Aff., ¶ 3.)

Further, Defendant argued in its Reply and at oral argument that the

general danger or risk of harm at issue consisted of Mrs. Nester (or any user of the

Workhorse for that matter) completing a series of discrete acts leading up to an

inanimate object depressing the accelerator and running her over.  (Reply. at 8-9)

Textron argues that it was not reasonably foreseeable that a person would perform

eight discrete steps to create the risk of harm at issue.  The Court disagrees.  Texas

law is clear that "foreseeability does not require that the actor anticipate the

particular accident or the precise manner in which the injury will

occur."  Rodriguez, 818.  The Texas Supreme Court has said that "foreseeability

requires only that the general danger, not the exact sequence of events that

produced the harm, be foreseeable."  Mellon, 5 S.W.3d at 655.  The foreseeability

at issue is not that Mrs. Nestor or any other user of the Workhorse would perform a

precise list of actions that would ultimately lead to harm.  Instead, the

foreseeability at issue is whether something could unintentionally release the

Workhorse's kick-off brake resulting in injury to people, property or both.

Plaintiffs point the Court to two pieces of evidence: Textron's

warning manual (Dkt. # 124-7, Ex. 6) and Nick Moore's deposition. (Moore Dep.

at 102-104.)  The Textron manual warns that "depressing the accelerator will

release the parking brake and cause the vehicle to move which could result in

severe personal injury or death." (Dkt. # 124-7, Ex. 6.)  Further, marketing

materials issued by Textron depict the Workhorse on a ranch with an equipment

box on the passenger seat indicating Textron knew the Workhorse would operate

in an environment similar to that in which Mrs. Nester's accident occurred.

(Dkt. #124-15, Ex. 14.)  Additionally, Nick Moore, a senior product manager at

Textron, provided the following testimony at his deposition:

> Question: And first of all, do you recognize this as a manual dated
> back to the 1989 year?
>
> Answer: Yes.
>
> Question: And on page A-3, up in the top left under Warning, do you
> see the same or substantially similar warning about unintended
> acceleration as the very first item under the word Warning?  That is
> the one that says, "When the vehicle is to be left unintended, turn the
> key to the off position, remove the key and engage the hill brake?
>
> Answer: Yes, I see that.
>
> Question:  So you recognize also, then, that as early as 1989 E-Z-
> GO/Textron had recognized that risk and was warning the user of it?

<u>Answer:</u> Yes.

(Moore Dep. at 104:2-17).  This evidence suggests Textron could foresee the risk of harm from unintended acceleration due to the accelerator releasing the parking brake.  Accordingly, there exists a genuine dispute of material fact about whether Textron knew or should have reasonably foreseen the risk of harm.

### 3.   Whether the Product Contains a Marketing Defect

The third element of a marketing defect claim requires a plaintiff to prove that the product actually contains a marketing defect.  <u>DeGrate</u>, 261 S.W.3d at 411.  "A defendant's failure to warn of a product's potential dangers when warnings are required is a type of marketing defect."  <u>Zavala v. Burlington N. Santa Fe Corp.</u>, 355 S.W.3d 359, 374 (Tex. App. 2011).

Textron points the Court to the affidavit of its expert witness Tim O'Byrne ("O'Byrne Aff.," Dkt. # 103-2 ¶¶ 3-4, Ex. 3.) and the report of its expert witness Dr. Alan Dorris ("Dorris Rpt.," Dkt. # 103-3, Ex. 4.A..)  Expert witness Tim O'Byrne, a livestock industry consultant, asserted that "the lack of any additional warnings did not render the E-Z-GO Workhorse cart at issue in this case unreasonably dangerous to an extent beyond that contemplated by the normal ranching user of such carts."  (O'Byrne Aff. ¶ 3.)  Dr. Dorris concluded in his report that the Workhorse's labels and instructions were "adequate and

appropriate" and alerted "anticipated users to the potential for serious injury as well as the means to reduce this risk." (Dorris Rpt. at 6.)

Plaintiffs have offered expert testimony, reports, and affidavits to establish that genuine disputes as to material facts exist as to the third element of a material defect claim. Plaintiffs' expert witness Dr. Vigilante, relying on his report, stated in his affidavit that the Workhorse contained a marketing defect because the vehicle had an "[inadequate warning] . . . regarding the inadvertent operation/unintended acceleration hazard associated with its kick-off brake system and carrying cargo in the passenger compartment [of the cart]." (Vigilante Aff. ¶ 8.) To support this allegation, Dr. Vigilante's expert report defines effective warnings and relies, *inter alia*, on two specific facts. First, Dr. Vigilante identified that "Textron's dash label failed to explicitly identify the inadvertent operation/unintended acceleration hazard associated with the kick-off brake system . . . and the increased risk of inadvertent operation associated with storing cargo in the passenger compartment." (Vigilante Rpt. at 12.) Second, Dr. Vigilante relied on the fact that the Workhorse manual does not indicate "that cargo should not be carried in the seat or floorboard of the vehicle." (Id. at 12-13.)

Accordingly, there exists a genuine dispute as to material facts about whether the Workhorse contained a marketing defect.

4. <u>The Absence of the Warning or Instructions Rendered the Product Unreasonably Dangerous to the Ultimate User of the Product</u>

The fourth element of a marketing defect claim requires a plaintiff to prove that the absence of the warning or instructions rendered the product unreasonably dangerous to the ultimate user of the product. <u>DeGrate</u>, 261 S.W.3d at 411. An adequate warning must be: (1) designed so that it can reasonably be expected to catch the attention of the consumer; (2) comprehensible and given a fair indication of the specific risks involved with the product; and (3) of an intensity justified by the magnitude of the risk. <u>Lozano v. H.D. Industries, Inc.</u>, 953 S.W.2d 304, 314 (Tex. App. 1997).

Textron argues that its warnings did not render the Workhorse unreasonably dangerous because its warnings were sufficient for an "ordinary user of the product with the ordinary knowledge common to the community as to the product's characteristics." (Def. Mot. at 17.) The thrust of Textron's argument is that the Workhorse's warnings were sufficient to warn ranchers, like Mrs. Nester, who are generally able to grasp the danger of utility vehicles. (<u>Id.</u> at 17-18 citing O'Byrne Aff. ¶¶ 3,4.) To support this contention, Textron cites the same argument as noted above—Tim O'Byrne's expert report that a rancher has keen senses to train themselves to instinctively minimize or eliminate the risk of an object

pushing down on the accelerator pedal, to keep a watchful eye on the vehicle and their surroundings at all times, and to not set themselves up for disaster. ("O'Byrne Rpt.," Dkt. # 103-2, Ex. 3.B. at 16.)

In rebuttal, Plaintiffs provide Dr. Vigilante's affidavit and report. Dr. Vigilante explained that the "failure to provide sufficient information to identify the inadvertent operation/unintended acceleration hazard and how to avoid it deprived users of critical information they needed to recognize the potential danger of carrying cargo in the passenger vehicle and/or leaving the key/light switch on." (Vigilante Report at 13.) To support this conclusion, Dr. Vigilante relies on multiple facts elicited from the depositions of Mr. and Mrs. Nester that the absence of sufficient warnings made the Workhorse unreasonably dangerous. (Id.) For example, Mr. Nester testified that he "never envisioned that the [Workhorse] could run away with nobody in the seat," (Scott Nester Dep. at 282:17-18) and "[i]f I would have known this could happen, that the pressure of something falling on the gas pedal would kick the brake off and run it . . . [i] would have crawled under that cart and I would have pulled that linkage pin out of there." (Id. at 284:12-18.) Further, Dr. Vigilante's report indicates that consistent with Textron's policy, Plaintiffs were not provided an owner's manual when they purchased the Workhorse. (Vigilante Rpt. at 12.) The Vigilante report similarly indicates that "the warning related to inadvertent operation/unintended acceleration was also

buried within other non-relevant information where it was likely to go unnoticed and presented in a manner which did not identify it as important." (Id.)

Accordingly, a genuine dispute of material fact exists to whether Textron provided an adequate warning as to the kick-off brake system.

### 5.  Causal Nexus

The final element of a marketing defect claim is whether the failure to warn or instruct constituted a causal nexus to the product user's injury.  DeGrate, 261 S.W.3d at 411.  A plaintiff may raise a fact issue on causation by "presenting evidence in support of causation or by relying on a presumption of causation." Chandler v. Gene Messer Ford, Inc., 81 S.W.3d 493, 506 (Tex. App. 2002).  Once a plaintiff proves the lack of adequate warnings or instructions rendered a product unreasonably dangerous, a rebuttable presumption arises that the user would have read and heeded such warnings or instructions.  Tidwell v. Terex Corp., No. 01-10-01119-CV, 2012 WL 3776027, at * 6 (Tex. App. Aug. 30, 2012) (citing Magro v. Ragsdale Bros., Inc., 721 S.W.2d 832, 834 (Tex. 1986)).  A defendant may rebut the presumption of causation with evidence that the user was blind, illiterate, intoxicated at the time of using the product, irresponsible, lacked judgment, or "by some other circumstance tending to show that the improper use would have occurred regardless of the proposed warnings or instructions."  Magro, 721 S.W.2d at 834.

Textron implies that it was not a marketing defect that caused Mrs.

Nester's injury, but instead her own negligence because "it is second nature for

ranchers to train themselves to mitigate the risk of personal injury.  (Dkt. # 103 at

17.)  To support this contention, Textron relies on the affidavit of Tim O'Byrne

wherein he states

> In regards to the primary operational principles of the kick-off brake
> system vehicle, it is easy for a rancher to fully grasp that if the
> vehicle's key is in the 'on' position, the direction level is in the
> 'Forward' position and the accelerator pedal is pushed down, by an
> operator's foot or by another force, the vehicle will move.

(O'Byrne Aff. ¶ 3.)  Further, Textron fails to rebut the presumption of causation by

not presenting any evidence that Mrs. Nester would not have read adequate

warnings even if Textron provided them.

Plaintiffs point to Dr. Vigilante's statement that inadequate "warning

and instruction regarding the inadvertent operation/unintended acceleration hazard

was . . . a producing cause of Mrs. Nester's incident and injury." (Vigilante Aff.

¶ 10); (see also Vigilante Rpt. at 22-23.)  Additionally, since the Plaintiffs have

already demonstrated a genuine dispute of material fact exists as to the adequacy of

the warnings, the presumption arises that Mrs. Nester would have read the

warnings if appropriate.  See Magro, 721 S.W.2d at 834.  To support the

presumption, Plaintiffs point to Mrs. Nester's deposition testimony where she

states that she was unaware of the risk associated with unintended acceleration due

27

to an object falling onto the accelerator.  ("Virginia Nester Dep. June 2014," Dkt. # 124-29 at 20:13-23, Ex. 27.)

Therefore, a genuine dispute of material fact exists as to whether the marketing defect caused Mrs. Nester's injury.

Overall, the Court finds that Textron had a duty to warn of the risk of unintended acceleration from an object releasing the kick-off brake because neither of the two exceptions apply.  Second, the Court finds that Textron has failed to establish that no genuine dispute of material fact exists as to each of the five elements of a marketing defect claim.  Further, Plaintiffs have come forward with sufficient evidence to demonstrate the existence of a genuine dispute of material fact as to all five relevant elements.  Accordingly, the Court **DENIES** the Defendant's Motion for Summary Judgment for the marketing defect claim.

## III.   Negligence

### A.   Negligent Design

A negligent design claim is conceptually distinguishable from the strict liability design defect claim.  See Grinnell, 951 S.W.2d at 437.  Where a strict liability claim looks at the condition of the product itself, a negligent design claim "looks at the acts of the manufacturer and determines if it exercised ordinary care in design and production."  Caterpillar, 911 S.W.2d at 384.  "To prevail on a claim of negligence against the supplier of an allegedly defective product, a

plaintiff must prove a legal duty owed to the plaintiff by the defendant, breach of that duty, and damages to the plaintiff proximately caused by the breach of the duty." Dewayne Rogers Logging, Inc. v. Propac Indus., Ltd., 299 S.W.3d 374, 385 (Tex. App. 2009). Further, "negligent design . . . claims are predicated on the existence of a safer alternative design [and] [a]bsent an alternative design, a claim for negligent design fails as a matter of law." Grinnel, 951 S.W.2d at 437. As the Court explained above in section 1.B., there exists sufficient evidence of a genuine dispute as to whether a safer alternative design exists.

### 1. Duty

The first question of a negligence analysis is whether a legal duty exists. The existence of a legal duty is a question of law. New Texas Auto Auction Servs, L.P. v. Gomez De Hernandez, 249 S.W.3d 400, 406 (Tex. 2008). Under Texas law, manufacturers owe a duty of reasonable care in the design of their products. Uniroyal, 928 S.W.2d at 68.

In its answer to the Plaintiffs First Amended Original Complaint, Textron admits that it designed and developed the Workhorse "in about 1995 or 96." (Dkt. # 40 ¶ 12.) Thus, the Court holds as a matter of Texas law that Textron owed a duty of reasonable care in the design of the Workhorse.

2. <u>Breach</u>

To establish a breach of duty, a plaintiff must show that the defendant did something an ordinarily prudent person exercising ordinary care would not have done under those circumstances. <u>Dewayne Rogers Logging</u>, 299 S.W.3d at 385 (citing <u>Degrate</u>, 261 S.W.3d at 409). Plaintiffs have submitted sufficient evidence to establish a genuine dispute of material fact regarding whether Textron breached its duty of reasonable care in designing the product.

In support of its summary judgment motion, Textron relies on the affidavit and report of Dr. Bizzak for its contention that it does not breach its duty. (Dkt. # 103 at 11.) However, Textron never points the Court to, and the Court cannot find, where Dr. Bizzak addresses the design process of the Workhorse. Regarding the element of breach, Dr. Bizzak's report only describes why certain alternative designs would not be safer. (Bizzak Rpt. at 12-17). For example, Dr. Bizzak concludes that "elimination of the kick-off brake feature would not prevent powered movement of the vehicle." (Bizzak Rpt. at 15.) Presumably, Textron illustrates this aspect of Dr. Bizzak's report to establish that an alternative safer design was not feasible because "[a]bsent an alternative design, a claim for negligent design . . . fails as a matter of law." <u>Grinnel</u>, 951 S.W.2d at 437. However, the Court explained in section 1.B. that there exists sufficient evidence of a genuine dispute as to whether a safer alternative design exists.

Plaintiffs submit evidence that a prudent product designer follows a safety design hierarchy— a systems engineering process that is a fundamental design and manufacturing practice.  (Newbold Rpt. at 12).  Plaintiffs cite the testimony of Textron's own employee James Fisher:

> Question: Do you agree that once a hazard is identified, the manufacturer has the responsibility to address it by using one of the means defined in the safety hierarchy to [sic] eliminate the hazard through design or control . . . ?

> Answer: I understand that you just recited the basic principles of product design that I believe we do use within the engineering department.

("Fisher Dep. 2," Dkt. # 124-8, Ex. 7 at 139:8-21.)  Plaintiffs provide Dr. Vigilante's report to demonstrate that Textron breached this standard of care by departing from the safety design hierarchy in its design process for the Worhorse. (Vigilante Rpt. ¶ E.2.)  Plaintiffs provide further testimony from James Fisher as evidence that Textron did not perform any failure analysis involving unintended acceleration in the design process for the Workhorse:

> Question: Okay.  Can you please recount for the jury all the different failure modes that you recall being discussed about the WorkHorse prior to it being put into the stream of commerce?

> Answer: I can't off the top of my head come up with one.  This was done in the mid '90s, later '90s.  That's a little further than my memory would allow . . . me to do.

> Question: . . . As we sit here now, is it true that you can't come up with a single differential failure mode that was discussed about the WorkHorse when it was designed?

> Answer: In the late 1990s, the answer is yes, I can't come up with a specific.
>
> Question: And as we sit here now, can E-Z-Go produce any documents whatsoever to show that any failure modes were discussed and analyzed prior to the WorkHorse being marketed and sold to the general public?
>
> Answer: Again, I think—I don't believe that—no, we did not document it under the type of system that we're utilizing today in the later '90s.

(Fisher Dep. 1 at 42:15-43:13.).  Thus, the Plaintiffs have established the existence

of a genuine dispute over whether Textron breached its duty of care in the design

of the Workhorse.

### 3.  Causation

In Texas, negligence requires a showing of proximate cause. See

Dewayne Rogers Logging, 299 S.W.3d at 385.  There are two separate components

of proximate cause: cause-in fact and foreseeability.  D. Houston, Inc. v. Love, 92

S.W.3d 450, 454 (Tex. 2002).

### i.  Cause In Fact

"The test for cause in fact is whether the defendant's act or omission

was a substantial factor in bringing about the injury that would not otherwise have

occurred."  Phillips v. Texas Dept. of Criminal Justice, 366 S.W.3d 312, 315 (Tex.

App. 2012).  "Whether a particular act of negligence is a cause in fact of an injury

has been said to be a particularly apt question for jury determination." <u>Rodriguez</u>,

963 S.W.2d at 818.

Neither Textron's Amended Motion for Summary Judgment

(Dkt. # 103) or its Reply (Dkt. # 135) provides any evidence that Mrs. Nester was

not injured when the Workhorse's kick-off brake released causing the cart to run

her over.  However, Plaintiffs submitted evidence of this causation in the form of

Scott Nester's deposition testimony:

> <u>Question:</u> So after Mrs. Nester got off the cart to go open the gate, the
> cattle that had been followed along the cart [sic] would have in some
> manner have pushed, pulled of [sic] moved the bag of feed or cubes
> that was balanced up against the front edge of the seat down on to the
> accelerator pedal?
>
> <u>Answer:</u> That's what I think happened. I mean that's [sic] logically
> looks like what happened to me.  They caught up with her when she
> was out opening the gate.  One of them stuck their head over and hit
> the bag or licked it, I don't know, and it fell over.

(Scott Nester Dep. at 58:1-11.)  Since Plaintiffs have come forward with some

evidence that the design of the kick-off brake was a cause in fact of Mrs. Nester's

injury, the Court finds that a genuine issue of material fact exists as to this element.

ii.   <u>Foreseeability</u>

"The test for foreseeability is whether a person of ordinary

intelligence would have anticipated the danger his or her negligent act or omission

creates."  <u>Phillips</u>, 366 S.W.3d at 315. "The inquiry regarding foreseeability asks

whether the injury 'might reasonably have been contemplated' due to the

defendant's conduct." Garcia v. Cross, 27 S.W.3d 152, 157 (Tex. App. 2000)

(quoting McClure v. Allied Stores of Tex., Inc., 608 S.W.2d 901,903 (Tex. 1980)).

Further, "foreseeability does not require that the actor anticipate the particular

accident or the precise manner in which the injury will occur once [the actor] has

created a situation through his negligence." Rodriguez, 963 S.W.2d at 818.

Instead, the Texas Supreme Court has repeatedly stated that "foreseeability

requires only that the general danger, not the exact sequence of events that

produced the harm, be foreseeable." Mellon Mortg. Co. v. Holder, 5 S.W.3d 654,

655 (Tex. 1999). To determine foreseeability, Texas law applies a two-prong test

which requires: (1) "that the injury be of such a general character as might

reasonably have been anticipated; and (2) that the injured party be so situated with

relation to the wrongful act that injury to him or to one similarly situated might

reasonably have been foreseen." Id.

Textron asserts that "it could not reasonably foresee the general

danger created by Mrs. Nester's actions." (Dkt. # 135 at 12.) Textron frames the

issue by defining the general danger as seven sequential events whereas if one

event "is removed, there is no general danger/hazard like that which existed in the

accident giving rise to this case." (Id. at 9.) However, the foreseeability analysis

under Texas law rejects requiring a discrete sequence of events when defining the

general danger. See Forrest v. Vital Earth Resources, 120 S.W.3d 480, 490 (Tex.

App. 2003) ("Foreseeability requires only that the general danger, not the exact

sequence of events that produced the harm, be foreseeable.").  Textron also

contends that "there is no evidence that anyone in a position similar to Mrs. Nester-

operating a utility cart on a ranch, around cattle or otherwise, has ever created such

a general danger before the sale of the cart in question. . . ."  (Dkt. # 135 at 16.)

Plaintiffs argue that Mrs. Nester's accident and injury was foreseeable

to Textron at the time of sale.  To support this contention, Plaintiffs present

evidence that Mrs. Nester's general injury was foreseeable because Textron

included a warning with the Workhorse that read "[i]f key switch is 'ON' and

parking brake is set, depressing the accelerator will release the parking brake and

cause the vehicle to move which could result in severe personal injury or death."

(Dkt. # 124-7, Ex. 6.)  Plaintiffs also cite to the deposition of Timothy O'Byrne,

one of Textron's expert witnesses, that Mrs. Nester's injury was foreseeable:

> Question: You would agree with me that with a foot-activated ignition
> system, there is a risk that an object could fall onto the accelerator
> pedal and start the vehicle?
>
> Answer: Yes.
>
> Question: That's a foreseeable risk, is it not?
>
> Answer: Yes.

(O'Byrne Dep. at 21:9-14.)  Further, Textron marketing materials depict the

Workhorse being used in a ranching environment with equipment displayed on the

passenger seat. (Dkt. # 124-15, Ex. 14.)  The warning of severe injury associated

with the kick-off brake and the marketing materials depicting the Workhorse being

used in the same environment in which Mrs. Nester was injured all support the

contention that the risk of harm at issue was foreseeable to Textron during the

design process.  Accordingly, the Court concludes that the Plaintiffs have come

forward with sufficient evidence that a genuine dispute exists over whether Mrs.

Nester's injury was foreseeable to Textron during the design process.

      Accordingly, the Court **DENIES** the Defendant's Motion for

Summary Judgment on the negligent design claim.

      B.    <u>Failure to Act Once Product Determined to be Dangerous</u>

      Plaintiffs allege that Textron was negligent based on its failure to

recall the product, correct the product through a technical bulletin, and exercise

reasonable care to learn of post-sale problems with the product.  (Dkt. # 37

¶¶ 101, 105.)

      Texas courts generally do not recognize a common law duty to

prevent risk once prior conduct is found to be dangerous.  <u>See</u> <u>Blackmon v. Am.</u>

<u>Home Prods. Corp.</u>, 346 F. Supp. 2d 907, 914 (S.D. Tex. 2004) (citing <u>Grinnell</u>,

951 S.W.2d at 438); <u>see also</u> <u>McLennan</u>, 245 F.3d at 430 ("Texas courts generally

do not recognize any post-sale duty to warn of product hazards arising after sale.").

An exception to this general rule exists where a manufacturer affirmatively

undertakes a program to remediate a defect or dangerous component of a product.

See Bell Helicopter Co. v. Bradshaw, 594 S.W.2d 519, 531-32 (Tex. App. 1979)

(reversed on other grounds).  Thus, "before holding a manufacturer negligent for a

post-sale duty, it must be established that the manufacturer assumed a duty and

then did not use reasonable means to discharge the duty."  Hernandez v. Ford

Motor Co., No. C.A. C-04-319, 2005 WL 1574474, at *1 (S.D. Tex. Jun. 28, 2005)

(internal citations omitted). Since there is no allegation and no evidence submitted

by Plaintiffs that Textron assumed a duty to warn or recall post-sale, this exception

does not apply.

Accordingly, the Court **GRANTS** the Defendant's Motion for

Summary Judgment as to the "duty to recall" cause of action as a matter of law.

C.   Negligent Marketing

To prevail on a negligent marketing claim, Texas law requires a

plaintiff to establish four elements: 1) a duty to act according to an applicable

standard of care; 2) a breach of the applicable standard of care; 3) an injury; 4) a

causal connection between the breach of care and the injury.  Ehticon Endo-

Surgery, Inc. v. Gillies, 343 S.W.3d 205, 211 (Tex. App. 2011).

1.  Duty

A designer and manufacturer has a duty to inform users of hazards

associated with the use of its products.  See Alm v. Aluminum Co. of Amer., 717

S.W.2d 588, 590-91 (Tex. 1986).  That duty is whether a reasonably prudent

person in the position of the designer would warn of hazards associated with the

designed product.  Id.  The existence of a legal duty is a question of law.  New

Tex. Auto, 249 S.W.3d at 406.

      In its answer to the Plaintiffs First Amended Original Complaint,

Textron admits that it designed and developed the Workhorse "in about 1995 or

96." (Dkt. # 40 ¶ 12.)  Thus, as a manufacturer of the Workhorse, the Court holds

that Textron owed a duty of reasonable care in warning of hazards associated with

the Workhorse.

      2.  Breach

      To establish a breach of duty, a plaintiff must show that the defendant

did something an ordinarily prudent person exercising ordinary care would not

have done under those circumstances.  Dewayne Rogers Logging, 299 S.W.3d at

385 (internal citations omitted).

      Plaintiffs have submitted sufficient evidence to establish a genuine

dispute of material fact whether Textron breached its duty of reasonable care in

warning users of the risk of unintended acceleration associated with the

Workhorse.  Textron attempts to demonstrate the absence of a genuine dispute by

pointing the Court to Dr. Alan Dorris' affidavit.  ("Dorris Aff.," Dkt. # 103-3, Ex.

4.)  Dr. Dorris' affidavit states that Textron "was not negligent relative to the

warnings provided" (Dorris Aff. ¶ 3) and Dr. Dorris' report states "[f]rom a [human factors engineering] perspective, the warning labels and instructions provided by Textron . . . were adequate and appropriate." ("Dorris Rpt.," Dkt. # 103, Ex. 4.A, at 6.)

Plaintiffs have provided evidence, however, that Textron did breach its duty of reasonable care.  First, Textron employee Nick Moore gave deposition testimony that Textron provided no warning regarding the placement of objects on the Workhorse's seat or floorboard (Moore Dep. at 31:5-11; see also Vigilante Rpt. at 12) despite Textron's use of marketing materials for the Workhorse that illustrate objects on the cart's seat.  (Dkt. #124-15.)  Plaintiffs have also provided evidence of breach with their expert Dr. Vigilante who stated in his affidavit and report that the risk of unintended acceleration increased when a user carried cargo in the Workhorse's passenger compartment. (Viglante Aff. ¶¶ 8-9; Vigilante Rpt. at 7.)  Dr. Vigilante also included in his report that Textron's inadequate warnings "deprived users . . .  of critical safety information."  (Vigilante Rpt. at 14.)  For example, Dr. Vigilante notes Textron knew that its warning about serious injury or death occurring where the key was left "ON" and depressing the accelerator would release the kick-off brake (Dkt. #124-7) was inadequate because its own employees admitted to exiting the Workhorse without turning the key to the "OFF" position.  (Vigilante Rpt. at 14; Fisher Dep.1 at 45:10-14, 56:21–57:-1.)  Finally, as

evidence of breach Dr. Vigilante stated in his expert report that Textron failed to create warnings that met the requirements of the American National Standard for Product Safety and Labels. (Vigilante Rpt. at 15-16.)

Accordingly, the Court finds that Plaintiffs have presented sufficient evidence to establish a genuine dispute of material fact concerning Textron's breach of its duty to exercise reasonable care in warning of risks associated with the Workhorse.

### 3. Causation

In Texas, negligence requires a showing of proximate cause. See Dewayne Rogers Logging, 299 S.W.3d at 385. There are two separate components of proximate cause: cause-in fact and foreseeability. Love, 92 S.W.3d at 454.

#### i. Cause In Fact

"The test for cause in fact is whether the defendant's act or omission was a substantial factor in bringing about the injury that would not otherwise have occurred." Phillips, 366 S.W.3d at 315. "Whether a particular act of negligence is a cause in fact of an injury has been said to be a particularly apt question for jury determination." Rodriguez, 963 S.W.2d at 818.

Plaintiffs have established a genuine dispute of material fact that Textron's negligence in marketing was a cause in fact of Mrs. Nester's injuries. Dr. Vigilante's affidavit and expert report states that Textron's "failure to provide

adequate warning and instruction regarding the inadvertent operation/unintended

acceleration hazard . . . was a producing cause of Mrs. Nester's injury." (Vigilante

Aff. ¶¶ 9, 10.) Mrs. Nester also provided deposition testimony that the warnings

did not clearly indicate to her that she needed to turn the key to the "OFF" position

each time she left the vehicle:

> Question: Do you remember reading on the label that was right there
> in front of the driver of the cart prior to your accident that before
> leaving the vehicle you should turn the key off?
>
> Answer: My understanding was that that [sic] was at the end of the day, to
> turn off the electrical system so that battery wouldn't die.

(Virginia Nester Dep. at 15:18-24.)

Accordingly, Plaintiffs have submitted sufficient evidence of a

genuine dispute of material fact that the alleged negligent warnings were a cause in

fact of Mrs. Nester's injury.

### i.   Foreseeability

"The test for foreseeability is whether a person of ordinary

intelligence would have anticipated the danger his or her negligent act or omission

creates." Phillips, 366 S.W.3d at 315. To determine foreseeability, Texas law

applies a two-prong test by demanding: (1) "that the injury be of such a general

character as might reasonably have been anticipated; and (2) that the injured party

be so situated with relation to the wrongful act that injury to him or to one

41

similarly situated might reasonably have been foreseen." Mellon Mortg., 5 S.W.3d at 655.

This Court has already explained above why a genuine dispute of material fact exists as to whether the general danger of what led to Mrs. Nester's injury was foreseeable to Textron. To be thorough, the Court notes it is undisputed that Mrs. Nester was a regular user of the Workhorse. (Virginia Nester Dep. at 6:20−25 to 7:1−4.) As a regular user, a genuine dispute exists whether it was foreseeable to Textron that its alleged negligent warnings could be a cause of Mrs. Nester's injuries. As evidence of this dispute, Plaintiffs rely on the deposition testimony of two Textron employees who testified that they would ignore warning labels on the Workhorse. Specifically, the employees testified that they would not follow the instruction to turn the key to the "OFF" position as was listed on the Workhorse warning labels. (Fisher Dep.1 at 45:10-14, 56:21–57:-1; Moore Dep. at 15:19−25.) Further, Dr. Vigilante stated in his report that "[v]ideos posted on YouTube by Textron depict Textron employees, spokespersons, and customers exiting a Textron vehicle without turning the key switch off." (Vigilante Rpt. at 18.) The Court finds this evidence indicative of the fact that it was foreseeable to Textron that users were not following the warnings and those users were at risk of serious injury for improperly using the Workhorse.

Accordingly, a genuine dispute of material fact exists whether Mrs. Nester's injury was foreseeable to Textron due to its alleged negligent warnings. Therefore, the Court **DENIES** the Defendant's Amended Motion for Summary Judgment as to the negligent marketing claim.

IV.   Res Ipsa Loquitor

*Res ipsa loquitur* is used in certain "limited types of cases when the circumstances surrounding the accident constitute sufficient evidence of the defendant's negligence." Haddock v. Arnspiger, 793 S.W.2d 948, 950 (Tex. 1990). The doctrine applies only where "(1) the character of the accident is such that it would not ordinarily occur in the absence of negligence; and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant." Haddock, 793 S.W.2d at 950. The likelihood of other causes does not have to be completely ruled out, but their likelihood must be "so reduced that the jury can reasonably find by a preponderance of the evidence that the negligence, if any, lies at the defendant's door." Porterfield v. Brinegar, 719 S.W.2d 558, 559 (Tex. 1986). Further, *res ipsa loquitor* is "simply a rule of evidence by which negligence may be inferred by the jury; it is not a separate cause of action from negligence. Haddock, 793 S.W.2d at 950; see also Allen ex rel. B.A. v. Albin, 97 S.W.3d 655, 669 (Tex. App. 2002) (holding that summary judgment need not address *res ipsa loquitor* because it is not a cause of action).

43

In the present case, the Plaintiffs cannot show that the E-Z-GO Workhorse ST350 was under the exclusive control of Textron. This requirement is meant to exclude the possibility that someone other than the Defendant caused the accident. Here, anyone—a third party, United Rentals, or the Plaintiffs themselves—could have manipulated the accelerator and brake system of the utility cart. The possibility that someone other than the Defendant tampered with the E-Z-GO Workhorse ST350 at issue precludes application of the *res ipsa loquitor* doctrine. See Harris v. Nat'l Passenger Railroad Corp., 79 F.Supp.2d 676, 679 (E.D. Tex. 1999) ("The possibility of someone other than the defendant meddling with the door precludes the application of the [*res ipsa loquitor*] doctrine."). Finally, *res ipsa loquitor* is not itself a cause of action. Haddock, 793 S.W.2d at 950.

Accordingly, the Court **GRANTS** the Defendant's Motion for Jummary Judgment on the issue of *res ipsa loquito*.[2]

V.   Gross Negligence

"A finding of ordinary negligence is a prerequisite to a finding of gross negligence." Dewayne Rogers Logging, 299 S.W.3d at 385 (citing Shell Oil Co. v. Humphrey, 880 S.W.2d 170, 174 (Tex. App. 1994)). "Gross negligence has

---

[2] Since *res ipsa loquitor* is a rule of evidence in Texas, Plaintiffs are not precluded from relying on the doctrine during trial to otherwise establish the elements of their negligence cause of action if it can be properly supported.

two requirements: (1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed with conscious indifference to the rights, safety, or welfare of others." Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 314 (5th Cir. 2002).

"'Extreme risk' is not 'a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff.'" Columbia Medical Ctr. Of Las Colinas, Inc. v. Hogue, 271 S.W.3d 238, 248 (Tex. 2008) (quoting Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 21–22 (Tex. 1994)). The Texas Supreme Court held that "an 'extreme degree of risk' is a likelihood of serious injury." Gen. Motors Corp. v. Sanchez, 997 S.W.2d 584, 596 (Tex. 1999). Further, this risk must be "of serious harm, 'such as death, grievous physical injury, or financial ruin.'" Henderson v. Norfolk S. Corp., 55 F.3d 1066, 1070 (5th Cir. 1995) (internal citation omitted).

With regard to the second prong of the gross negligence test, "[i]t is the plaintiff's burden to show that the defendant knew about the peril but his acts or omissions demonstrate that he did not care." Sage v. Howard, 465 S.W.3d 398, 407 (Tex. App. 2015). "An act or omission that is merely ineffective, thoughtless, careless, or not inordinately risky is not grossly negligent." BP Oil Pipeline Co. v.

Plains Pipeline, L.P., No. 14-13-00352-CV,  2015 WL 3988574, at *11 (Tex. App.

Jun. 30, 2015) (quoting Reeder v. Wood Cty. Energy, LLC, 395 S.W.3d 789, 797

(Tex. 2012)).

   The Court notes first that both parties addressed the gross negligence

cause of action with only cursory attention in their respective briefs.  Textron, as

the moving party, does not identify those portions of the record which it believes

demonstrate the absence of a genuine issue of material fact as to the gross

negligence claim.  Instead, Textron simply argues that "[i]nasmuch as negligence

is a necessary element of any gross negligence cause of action, Plaintiffs' gross

negligence claim must also be dismissed as a matter of law.  (Dkt. # 103 at 12−13.)

Plaintiffs argue that since they have "established there is at least some evidence of

their negligent design claims and Textron has failed to challenge any aspect of the

Nesters' gross negligence claims other than to assert no underlying negligence

exists," the Court should deny summary judgment.

   A. Extreme Degree of Risk

   It is undisputed that Mrs. Nester is a quadriplegic as a result of an

accident involving the Workhorse.  (Dkt. # 37 ¶ 10.)  Such an injury, without any

doubt, is objectively viewed as serious.  Further, evidence in the record indicates

there existed a risk of severe personal injury associated with the linkage of the

accelerator and parking brake on the Workhorse.  For instance, Textron included a

warning with the Workhorse that stated ". . . depressing the accelerator will release the parking brake and cause the vehicle to move which could result in severe personal injury or death." (Dkt. # 124-7, Ex. 6.)  Further, James Fisher, a Textron employee and design engineer, agreed that the release of the brake by pressing the accelerator could be dangerous:

> Question: Now, warning, the admonishment in the manual is, warning is something that indicates if you don't follow it, severe personal injury could occur.
>
> Answer: Correct.
>
> Question: So certainly at the time you designed this vehicle, you knew that if, in fact, the switch is on and the parking brake was set, depressing the accelerator would release the parking brake and cause the vehicle to move which could result in severe personal injury or death?
>
> Answer: That's what it says.
>
> Question: Well, you knew that, didn't you?
>
> Answer: Yes

(Fisher Dep. 1 at 216:6-18.)  Mr. Fisher's testimony and the warning that severe injury could occur, taken together, establish evidence that the kick-off brake on the Workhorse involved an extreme degree of risk.  The Texas Supreme Court found sufficient evidence to support the objective element of a gross negligence claim where "experts agreed that a mis-shifted automobile [was] very dangerous."  Gen. Motors Corp. v. Sanchez, 997 S.W.2d 584, 596 (Tex. 1999).  Here, Textron's own

warning label and one of its design engineers indicate that the kick-off brake was very dangerous.

Thus, the Plaintiffs have submitted evidence to establish a genuine dispute as to the objective element of a claim for gross negligence because the design of the Workhorse's kick-off brake system involved an extreme degree of risk.

B. Subjective Element

Plaintiffs have provided at least some evidence that Textron was aware of the extreme risk but disregarded it.  Plaintiffs proffer the expert report of Herbert Newbold as evidence that Textron was aware of the risk and danger of unintended acceleration, failed to implement the fundamental and accepted engineering principal of the safety design hierarchy, and that Textron made "no legitimate attempt to perform a hazard analysis to identify the danger associated with unintended acceleration that can occur when an object contacts the accelerator." (Newbold Rpt. at 12-13.)  Next, as at least some proof that Textron was aware its warnings were inadequate, Textron's own employees gave deposition testimony that they failed to adhere to the warnings instructing them to turn the key to the "OFF" position when exiting the vehicle.  (Fisher Dep.1 at 45:10-14, 56:21–57:-1; Moore Dep. at 15:19−25.)

Accordingly, the Court finds that a genuine dispute as to material facts exist with regards to Plaintiffs' gross negligence claim.  Thus, the Court **DENIES** the Defendant's Motion for Summary Judgment as to this claim.

VI.   Breach of Warranty of Merchantability

To establish a breach of the implied warranty of merchantability, a plaintiff must show that the product contained a defect that renders it unfit for its ordinary purpose, the defect existed when it left the manufacturer's possession, and that the defect caused the plaintiff to suffer injury.  Gen. Motors Corp. v. Garza, 179 S.W.3d 76, 81 (Tex. App. 2005); Roventini v. Ocular Sciences, Inc., 111 S.W.3d 719, 723 (Tex. App. 2003); Tex. Bus. & Com. Code § 2.314. Non-purchasing parties affected by the product, such as the family of the ultimate purchaser, may sue under breach of implied warranty for personal injury. Garcia v. Tex. Instruments, Inc., 610 S.W.2d 456, 465 (Tex. 1980).

The limitations period for warranty claims in Texas is four years. Tex. Bus. & Com. Code § 2.725(a), (b); Grinnell, 951 S.W.2d at 435.  "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Tex. Bus. & Com. Code § 2.275(b).  Unless a warranty explicitly extends to future performance of the goods, a breach of warranty occurs when tender of delivery is made. Id.  A cause of action for breach of implied

warranty of merchantability accrues upon delivery to the buyer by the seller.  Am. Alloy Steel, Inc. v. Armco, Inc., 777 S.W.2d 173, 176 (Tex. App. 1989).

The parties do not dispute that the Plaintiffs purchased the utility vehicle on January 20, 2005.  (Dkt. # 124-33, Ex. 31.)  Therefore, the limitations period for a warranty claim under Texas law expired on January 21, 2009.

Accordingly, the Court **GRANTS** the Defendant's motion for summary judgment on the breach of warranty cause of action.

<u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Amended Motion for Summary Judgment.  (Dkt. # 103.)  The Court **DENIES** Defendant's summary judgment motion as to Plaintiffs' design defect claim, marketing defect claim, negligent design claim, negligent marketing claim, and gross negligence claim.  The Court **GRANTS** Defendant's summary judgment motion as to Plaintiffs' negligent recall claim, *res ipsa loquitor* claim, and breach of warranty claim.

**IT IS SO ORDERED.**

**DATED:** Austin, Texas, December 22, 2015.

_____
DAVID ALAN EZRA
UNITED STATES DISTRICT JUDGE